699 P.2d 364

**STATE of Arizona, Appellee,**

v.

**Lee Roy PERKINS, Appellant.**

No. 5990–2.

Supreme Court of Arizona,
En Banc.

May 2, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Gary A. Fadell, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Richard I. Mesh, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

Appellant, Lee Roy Perkins, was convicted of nine counts of armed robbery, A.R.S. § 13–1904, class 2 felonies, and one count of aggravated assault, A.R.S. § 13–1204, a class 3 felony. At the time he committed these offenses, appellant was on parole from two counts of armed robbery (CR–104531). The jury found that each of appellant's ten offenses was of a dangerous nature. Appellant was sentenced. On appeal, we affirmed the conviction but remanded the case for resentencing due to trial counsel's ineffective representation during sentencing. *See State v. Perkins*, 141 Ariz. 278, 686 P.2d 1248 (1984) (*Perkins* I). By the time of resentencing, appellant's sentences for his previous crimes (CR–104531) had expired. The trial court imposed a life sentence without possibility of parole for 25 years on each count. A.R.S. § 13–604.01(A). The sentences were designated to run as follows:

Counts 1–4  concurrent sentences;

Counts 5–6  concurrent sentences, to be served consecutively to the sentences imposed in counts 1–4;

Counts 7–9  concurrent sentences, to be served consecutively to the sentences imposed in counts 5–6;

Count 10  concurrent to the sentences imposed in counts 7–9, but to be served consecutively to the sentences imposed in counts 5–6.

The resulting sentence was for three consecutive terms of life imprisonment without possibility of parole or other release for 75 years. Appellant now appeals from this sentence. (*Perkins* II). This court has jurisdiction. Ariz. Const. art. 6, § 5(3); A.R.S. §§ 13–4031, 13–4035. We affirm, with the sentences modified as specified. We address the following issues:

1. May a trial court impose consecutive terms of imprisonment, other than for sentences not previously served, if the accused is sentenced pursuant to A.R.S. § 13–604.01(A)?

2. Did appellant's crimes constitute "spree" offenses for which consecutive terms of imprisonment were improper?

3. Did the imposition of three life sentences without possibility of parole or other release for 75 years constitute cruel and unusual punishment in violation of the eighth amendment?

## FACTS

The crimes at bar arose from a series of three armed robberies occurring during the late evening hours of September 25, 1982 and the early morning hours of September 26, 1982. The victims of these crimes were ten young people who had been partying on the river bottom of the Salt River. Nine of the victims were robbed and one [Barbara Pell] was assaulted.

In the first incident, four young people were riding in a car on the river bottom going toward the party area. Suddenly, a car came from behind and cut them off, forcing them to stop. Appellant and codefendants Donald Meeker and James Reed jumped out of the overtaking car. Appellant was armed with a sawed-off shotgun while Meeker was armed with a handgun. They robbed the victims at gunpoint and left.

In another such incident, two young persons, Timothy Thompson and Scott Gronek, were leaving the party area. As in the first armed robbery, a car swerved in front of them and forced them to stop. Appel-

lant and Meeker sprang from the car. Meeker went to the driver's side and put a handgun to Thompson's head. Appellant went to the passenger side of the car and pointed the shotgun at Gronek's throat. They robbed the car's occupants of their wallets. Appellant then struck Gronek in the face with the shotgun.

In the last incident, four young people were leaving the party area in a car. They were overtaken by the robbers' car. Appellant and Meeker robbed three of the car's occupants at gunpoint. The fourth occupant of the car, Barbara Pell, was not carrying any valuables and was not robbed. Appellant did, however, assault her by striking her hand with the butt of the shotgun.

Appellant was tried and convicted of nine counts of armed robbery and one count of aggravated assault. In sentencing appellant to three consecutive life terms, the trial court stated that appellant was a danger to the community and must be incarcerated for a long time for the protection of the community.

1. MAY THE TRIAL COURT IMPOSE CONSECUTIVE TERMS OF IMPRISONMENT OTHER THAN FOR SENTENCES NOT PREVIOUSLY SERVED IF THE ACCUSED IS SENTENCED PURSUANT TO A.R.S. § 13–604.01(A)?

▇ A.R.S. § 13–604.01(A) requires a penalty of life imprisonment without possibility of release for 25 years for armed offenses committed while a person is on parole or other release from confinement. That section further provides that:

> A sentence imposed pursuant to this subsection *shall be consecutive to any other sentence* from which the convicted person has been temporarily released (emphasis added).[1]

Appellant asserts that multiple sentences imposed pursuant to A.R.S. § 13–604.01(A) can only be consecutive to a sentence yet

---

1. This statutory provision was subsequently amended in a manner not material to the present issue. *See State v. Weible,* 142 Ariz. 113, 118, 688 P.2d 1005, 1010 (1984).

unserved and must otherwise be concurrent. If additional consecutive sentences were imposable, appellant argues, then these sentences would not be "consecutive to any other sentence" in accordance with the mandatory language of the statute.

■ Appellee proposes a different interpretation of A.R.S. § 13–604.01(A). A.R.S. § 13–708 expressly authorizes a trial judge to impose consecutive sentences. Appellee contends that if the legislature had intended to prohibit imposition of consecutive sentences under A.R.S. § 13–604.01(A), the legislature would have provided an express exception. Additionally, appellee urges that it is the duty of this court to adopt a construction of a statutory provision which *reconciles it with other statutes where such a reasonable harmonizing interpretation is available. See* 73 Am.Jur. *Statutes* § 254 n. 70 and accompanying text; 82 C.J.S. *Statutes* § 291 nn.56–60 and accompanying text; *Southern Pacific Co. v. Gila County,* 56 Ariz. 499, 109 P.2d 610 (1941). We agree.

■ We find appellant's technical and strict construction of the statute unpersuasive. The Arizona Legislature has abrogated the common law rule that penal statutes are to be construed strictly. Rather, these statutes should be interpreted according to the fair meaning of their terms and in furtherance of the policies underlying the law. A.R.S. § 13–104. Among the policies reasonably attributable to the legislature in enacting A.R.S. § 13–604.01(A), we would include:

1. Deterrence of felons from committing armed offenses while on release from confinement. *State v. Noriega,* 142 Ariz. 474, 487, 690 P.2d 775, 788 (1984); A.R.S. § 13–101(5) (it is the public policy of this state to "insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized . . .");

2. Protection of the public from dangerous felons by prolonged confinement. *State v. Noriega, supra;*

3. Enhanced punishment as retribution for violation of the conditions of parole or other release from confinement by commission of an armed offense. *See State v. Bly,* 127 Ariz. 370, 372, 621 P.2d 279, 281 (1980) (retribution is one of the policies underlying our criminal code); *Cf.* A.R.S. § 13–101(6) (it is the public policy of this state to "impose just and deserved punishment on those whose conduct threatens the public peace");

4. Encouraging parole or other release from confinement. *State v. Noriega, supra.*

Appellant's construction of the statute would not promote these policies. As to deterrence, criminals would be encouraged to commit as many criminal acts as possible while on release from prison, secure in the knowledge that they could only receive concurrent sentences for these offenses. Such a sentencing policy would not deter criminal wrongdoing. With respect to protection of the public, appellant's construction would prevent the court from ordering longer confinement even if the defendant posed a serious danger to the community. As to retribution, appellant's interpretation would not allow the trial court to impose the enhanced punishment that fits a truly serious crime. Finally, because it would not deter criminals from committing crimes, it would not encourage parole or other prisoner release from confinement.

■ In sum, we do not believe that the legislature intended to fix an arbitrary limit on the maximum punishment imposable pursuant to A.R.S. § 13–604.01(A) for armed offenses committed while on release from confinement. *Cf. State v. Mulalley, infra,* 127 Ariz. at 92, 618 P.2d at 589 (acknowledgment in dictum that consecutive sentences would be proper, pursuant to A.R.S. § 13–1206, a recidivist statute with an identical provision). A.R.S. § 13–708 authorizes the imposition of consecutive sentences. Appellant does not allege that the trial court failed to comply with A.R.S. § 13–708 by failure to state reasons why the sentences should run consecutively.

*See State v. Meeker*, 147 Ariz. 256, 265, 693 P.2d 911, 920 (1984) (trial judge complied with A.R.S. § 13–708 by stating on the record that Meeker required long incarceration due to the danger he poses to society). We find no error.

## II. DID APPELLANT'S CRIMES CONSTITUTE "SPREE" OFFENSES FOR WHICH CONSECUTIVE SENTENCES WERE IMPROPER?

Appellant was convicted of nine counts of armed robbery and one count of aggravated assault arising from three incidents that occurred within a one and one-half hour period. These crimes were committed in a similar manner and within a few miles of one another. Appellant asserts that he is entitled to concurrent sentences for these crimes because he is a "spree" offender.

■ A.R.S. § 13–604(H), in relevant part, bars consecutive terms of sentence enhancement for "spree" offenses that occur on the same occasion:

Convictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section.

There is, however, no express statutory language which directs that A.R.S. § 13–604(H) limits sentences imposed pursuant to A.R.S. § 13–604.01. We have, however, applied this statutory limitation to a similar repeat offender statute, namely, (former) A.R.S. § 13–1206, which punished dangerous or deadly assaults by a prisoner. *See State v. Mulalley*, 127 Ariz. 92, 97, 618 P.2d 586, 591 (1980). We can find no cogent reason why A.R.S. § 13–604(H) would apply to repeat offender provisions like A.R.S. § 13–1206 and § 13–604 but not to another statute in *pari materia*, A.R.S. § 13–604.01. We conclude that A.R.S. § 13–604(H) limits sentences imposed under A.R.S. § 13–604.01.

We must accordingly decide if the trial court improperly ordered consecutive sentences for "spree" offenses in the present case. The trial judge punished these three armed robbery incidents separately by imposing separate consecutive sentences for each criminal incident. The only question, therefore, is whether these incidents were different "occasions" for purposes of A.R.S. § 13–604(H).

■ Appellant asserts that the instant offenses arose on the same occasion because they occurred pursuant to a common scheme of appellant and his codefendants to rob whomever they could in the river bottom area. Offenses committed by reason of such an ill-defined conspiracy do not, however, necessarily indicate that such offenses were committed on the same occasion. Similarly, although the spatio-temporal proximity and similarity of modus operandi of these criminal incidents is relevant to determining whether they occurred on the same occasion, these factors are not of controlling importance. *Cf. State v. Roylston*, 135 Ariz. 271, 660 P.2d 872 (App.1983) (abuse of discretion for trial court to presume without considering the evidence that four burglaries were committed on the same occasion for purposes of A.R.S. § 13–604(H) merely because these burglaries occurred within a 24-hour period).

We have never before explained the test for what constitutes an "occasion" for purposes of A.R.S. § 13–604(H). Initially, we note that A.R.S. § 13–116 already bars multiple punishment for the same conduct. The specific focus of A.R.S. § 13–604(H), if this statute is not to be mere surplusage, must be to prohibit multiple punishment for separate criminal conduct that occurs on the same occasion. The only other state with similar statutory provisions, New York, would follow this same construction. *See* subsection (2) [analogue to A.R.S. § 13–116] and subsection (3) [analogue to A.R.S. § 13–604(H) ] of N.Y. Penal Laws § 70.25 (1984) and the commentary to subsection (3) ("Subdivision 3 is designed to cover cases where consecutive definite sentences are imposed for offenses committed by separate acts, but perpetrated in a single incident or transaction").

Some states have passed statutes like A.R.S. § 13–604(H) which bar multiple pun-

ishment for crimes committed on the same "occasion," "incident," "transaction," "episode," or similar locution. *See* Alaska Laws § 12.55.025(g)(2) (sentences may be consecutive if the crimes "are part of a continuous criminal episode"); Idaho Code § 19–2520(E) (Supp.1984) (no enhanced punishment for offenses committed in the same indivisible course of conduct); Ill. Criminal Laws and Procedure Ch. 38, ¶ 1005–8–4(a) (1982) (barring consecutive sentences with certain exceptions for multiple offenses "which were committed as part of single course of conduct during which there was no substantial change in the nature of the criminal objective"). Ill. Rev.Stat. Ch. 38, ¶ 33B–1(c) (Supp.1984) (no enhanced punishment for offenses committed at same time or as part of the same transaction); Md.Crim.Law art. 27 § 643B(c) (Supp.1984) (only enhanced punishment for dangerous offenses that don't arise out of the same incident); N.M.Stat. Ann. § 31–18–17(B) (1978) (no enhanced punishment for offenses committed on separate occurrences or as part of a separate transaction); N.Y.Penal Laws § 70.25(3) (1984) (limiting punishment for multiple offenses which "were committed as parts of a single incident or transaction"); Wyo. § 6–10–201(a) (1977) (no enhanced punishment for crimes that arose out of separate occurrences).

Some model legislation has included similar prohibitions. *See* Model Penal Code § 1.07(1)(e) (Proposed Final Draft, 1962) (no consecutive sentences if "the offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted unless the law provides that specific periods or instances of such conduct shall constitute separate offenses"); Model Sentencing Act § 17 (1972) (sentences for a "single criminal episode" shall be concurrent); Uniform Model Sentencing and Corrections Act § 3–107(1) (1979) (sentences shall be concurrent for multiple offenses "committed as part of a single continuous course of conduct during which there was no substantial change in the nature of the criminal objective").

Courts in jurisdictions without such statutes have imposed similar transactional limitations on multiple punishment. *See, e.g., Edmond v. State,* 280 So.2d 449, 450, 453 (Fla.App.1973), Comment, *Cumulative Sentencing for Offenses within a Single Transaction,* 26 U.Fla.L.Rev. 367 (1974). There is, however, a split of authority as to whether this common law limitation on multiple punishment is part of the constitutional prohibition against double jeopardy. *See Statutory Implementation of the Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee,* 65 Yale L.J. 339, 344 (1956).

Various tests have evolved to determine what constitutes a criminal "transaction" or "occasion" for purposes of preventing multiple punishment. *See* Westen & Drubel, *Towards a General Theory of Double Jeopardy,* 1978 S.Ct.Rev. 81, 116; *see also* Note, *One Transaction—One Conviction: the Texas Doctrine of Carving,* 25 Baylor L.Rev. 623, 630 (1978); Note, *Multiple Punishment and Consecutive Sentences: Reflections on the Neal Doctrine,* 58 Calif. L.Rev. 357, 363ff (1970). These tests are quite similar to the criteria for determining whether there is multiple punishment for purposes of the constitutional prohibition against double jeopardy.

■ Thus, for example, some courts have adopted the "independent motivation" test, finding a single occasion only if the defendant acted for a single and not separate criminal objectives. *See Neal v. State,* 55 Cal.2d 11, 19, 357 P.2d 839, 842–43, 9 Cal.Rptr. 607, 610–11 (1960); *People v. Stewart,* 45 Ill.2d 310, 259 N.E.2d 24 (1970); *State v. Cloutier,* 286 Or. 579, 596 P.2d 1278 (1979); Or.Rev.Stat. § 131.505(2) (1984) (" 'criminal episode' means continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective"); Comment, *Sentencing the Multiple Criminal Offender—A Comprehensive Approach,* 59 Ore.L.Rev. 339 (1980). Other courts have adopted as a criterion the singleness of the

act or course of conduct. *See People v. King,* 66 Ill.2d 551, 6 Ill.Dec. 891, 897, 363 N.E.2d 838, 844 (1977) (rejecting the independent motivation test); Comment, *"Separate and Distinct Acts" is the Appropriate Test for Multiple Convictions and Concurrent Sentences,* 1978 U. of Ill.L.F. 180. Still other courts would focus upon the differences between elements of the multiple offenses, the sameness of the evidence to prove the multiple crimes, or the intent of the legislature. *See generally* Comment, *Twice in Jeopardy,* 75 Yale L.J. 262, 267 (1965); Westen & Drubel, *supra,* at 111. We believe that under any of these tests, the crimes committed in this case were committed on separate occasions.

To determine if the instant offenses were committed on the same occasion, we must examine recognized instances of "spree" offenses. The Comment to A.R.S. § 13–704(F) [now A.R.S. § 13–604(H)] provides an example of offenses committed on the same occasion:

> If the offender commits a robbery and in order to escape he or she kidnaps the victim, a consolidation of the two felonies with a conviction on the robbery would not subject this "spree" offender to the provisions of Section 704 in the event of his conviction for kidnapping.

Arizona Criminal Code Commission, Arizona Revised Criminal Code § 704, at 96–97 (1975). *See also State v. Hannah,* 126 Ariz. 575, 577, 617 P.2d 527, 529 (1980) (this same comment cited with approval in dictum). We also found a "spree" offense on the facts of *State v. Mulalley, supra.* In that case, the accused was a prisoner who attempted to escape from a courtroom by taking a court reporter as a hostage. *Mulalley,* 127 Ariz. at 93, 618 P.2d at 587. A policeman tackled the prisoner and disarmed him. *Id.* The defendant was convicted of two violations of A.R.S. § 13–1206: one for assaulting the hostage and another for assaulting the police officer. *Id.* On appeal, we held that enhanced sentences for these two crimes could not be imposed consecutively because they occurred on the same occasion. *Id.*

These examples are distinguishable from the instant case for three reasons. First, in both of the aforementioned examples, there was a specific target offense (or offenses) and not merely an overly vague conspiracy. Second, although not alone a controlling factor, there was greater spatio-temporal proximity between the crimes in the aforementioned examples than in the crimes at bar. Third, although "occasion" is such a basic word that it is not easily defined, these three robbery encounters appear to have all the features of separate criminal incidents. In each of these three armed robbery incidents, there were distinct crimes committed against distinct victims, with different valuables taken in each robbery. The acts used to establish the elements of each robbery incident were distinct. There was separate danger created in each robbery by appellant's use of the shotgun to threaten the victims. In two of these three incidents, one of the victims was actually harmed by appellant. Overall, nine persons were robbed; ten persons were threatened with deadly weapons. Appellant and his accomplices apparently did not form the intent to proceed to a new robbery until after completing the prior robbery. The additional criminal incidents were not necessary to complete either the initial robbery encounter or to escape afterward. Different evidence was used to prove each robbery incident because there were different eyewitnesses to each crime.

■ Additionally, to classify such a vague and potentially open-ended conspiracy as an "occasion" for purposes of A.R.S. § 13–604(H) would not promote the policies of this statute. One aim of A.R.S. § 13–604(H) is to mitigate the severity of imposing consecutive enhanced sentences for multiple offenses committed on the same occasion. Another aim, no doubt, is to permit the law to punish more severely those who have committed separate or multiple offenses. In that light, we do not believe that it would promote the intent of this statute to bar consecutive sentences in this case.

■ Additionally, we note that the legislature has indicated some concern with the potentially broad scope of A.R.S. § 13–604(H). As originally enacted, A.R.S. § 13–704(F) [now A.R.S. § 13–604(H)] read in pertinent part:

Convictions for two or more offenses not committed on the same occasion or as part of a single continuing course of action ... may be counted as prior convictions for purposes of this section.

Before the effective date of this statute, it was renumbered as A.R.S. § 13–604(H) and amended to its present form. The above underlined language, which appears to broaden the scope of the statute, was eliminated. Given all these circumstances, we disagree with appellant's expansive construction of the statute.[2] We acknowledge the conceptual difficulties in distinguishing between "occasions" for the purposes of A.R.S. § 13–604(H). We decide in the present case only that a vague and potentially open-ended conspiracy to commit whatever crimes can be committed is alone insufficient to unite apparently distinct crimes. We find no error with the consecutive sentences imposed.

### III. APPELLANT'S SENTENCE DOES NOT CONSTITUTE CRUEL OR UNUSUAL PUNISHMENT

■ Appellant argues that the imposition of three consecutive life sentences pursuant to A.R.S. § 13–604.01(A) is cruel and unusual punishment, as applied to him, in violation of the eighth and fourteenth amendments to the United States Constitution, Arizona Constitution, article 2, section 15, and *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). According to *Solem v. Helm, id.,* a reviewing court must apply a four-part test to determine if a sentence is unconstitutionally excessive. The court must consider: 1) the gravity of the offense; 2) the harshness of the penalty; 3) the sentences imposed on other similarly situated criminal defendants in the same jurisdiction; and 4) the sentences imposed for the commission of the same crime in other jurisdictions. *Id.* at 292, 103 S.Ct. at 3010–11, 77 L.Ed.2d at 650; *State v. Goswick,* 142 Ariz. 582, 586, 691 P.2d 673, 677 (1984).

■ The guidelines in *Solem v. Helm, supra,* when applied to the instant facts, support the sentence imposed.

#### 1. *The Gravity of the Offense*

As to the gravity of the offense, we find that appellant's crimes were very serious. Appellant committed nine armed robberies and one aggravated assault while armed with a sawed-off shotgun. The potential for serious harm was extremely high. The destructive force of a shotgun blast is well-known. There is certainly evidence that appellant was willing to resort to violence. Appellant struck one victim in the face with the shotgun and smashed another victim's hand with the butt of the shotgun. The great number of persons who were subjected to the threat of this serious danger also enhances the seriousness of the offense. Finally, appellant's commission of this offense while on parole and with the aid of accomplices increases the severity of the offense. *See State v. Noriega, supra,* 142 Ariz. at 488, 690 P.2d at 788. Appellant contends that the absence of substantial injury conclusively shows that the punishment was excessive. We have held, however, that the lack of substantial injury does not always reflect the danger the defendant poses to society. *State v. Noriega, id.* We have also approved the imposition of enhanced punishment under repeat offender statutes despite the absence of serious injury. *See State v. Garcia,* 141 Ariz. 97, 685 P.2d 734 (1984) (prisoner wielding bar in confrontation with police who threatened harm but harmed no one); *State v. Mulalley, supra,* 127 Ariz. 93–94, 618 P.2d 587–88 (both victims suffered minor injuries); *State v. Goswick, supra,* 142 Ariz. at 583, 691 P.2d at 674 (victim suffered a

---

2. We note parenthetically the legislature's apparent disapproval of the "continuing course of action" formulations of the Model Penal Code § 1.07(1)(e) and the Uniform Model Sentencing and Corrections Act, § 17, *supra.*

wound that was not serious and that required only minor bandaging). The trial court's finding that appellant was a danger to society is supported by the aggravating circumstances surrounding the offense. We therefore believe that the offense was sufficiently grave to warrant enhanced punishment.

### 2. *The Harshness of the Sentence*

We agree that the imposition of three consecutive life sentences is severe. We need not decide, however, whether we would impose the same punishment under these circumstances. We need only decide whether these sentences are unconstitutionally harsh in the light of the asserted justification for the punishment. *State v. McNair*, 141 Ariz. 475, 484, 697 P.2d 1230, 1239 (1984). In *McNair*, this court recognized that, typically, both dangerous and repeat offenders receive more severe sentences than nondangerous and first offenders. *Id.* Appellant fits both of these categories. In particular, there was substantial evidence to support the trial judge's finding that appellant posed a danger to society. Appellant had previously been convicted of six felonies, including most recently two counts of armed robbery. Appellant had been on release for only approximately one month before committing the crimes at bar. Appellant's presentence report concluded that:

> This defendant's record demonstrates a consistent pattern of criminal transgressions that have consistently escalated both in the severity of the offenses and the multiplicity of offenses over a short time.... Incarceration of this defendant is necessary for the protection of the community.

There was also a notable lack of evidence of mitigating factors to balance against these aggravating factors. Appellant has not been employed in seven years due to his repeated crimes and incarceration. He was only sporadically employed before this time. Neither his age nor his past history indicate that he is an especially good candidate for rehabilitation. Under these circumstances, we do not find his sentence unconstitutionally severe.

### 3. *Other Crimes in this Jurisdiction*

Appellee's sentences are proportional to those imposed for similar crimes in this jurisdiction. We compare the crimes in effect at the time of the offense. *State v. Noriega, supra*, 142 Ariz. at 488, 690 P.2d at 789 n. 2. Prisoners who committed deadly or dangerous assaults on the date of the instant offenses were subject to life sentences without possibility of parole for 25 years. *See* former A.R.S. § 13–1206; (This statute was amended and the mandatory life imprisonment was stricken. *See State v. Noriega, id.*). Life sentences under this statute have consistently survived eighth amendment scrutiny. *See State v. Noriega, id.* at 488, 690 P.2d at 789, and the cases cited therein. Life sentences required by A.R.S. § 13–604.01(A) have also survived eighth amendment scrutiny. *See State v. McNair, supra; State v. Noriega, supra.*

Additionally, assuming that the trial court would impose consecutive sentences for similar reasons, the court could have sentenced appellant to a comparable term of imprisonment without applying the provisions of A.R.S. § 13–604.01(A). With appellant's prior armed robbery convictions added to his convictions for the instant offenses, appellant stood before the trial court as a third-time dangerous offender. Pursuant to A.R.S. § 13–604(G), appellant faced a minimum sentence of 21 years and a maximum sentence of 35 years on each count. Because appellant would be required to serve a minimum of two-thirds of this sentence, the trial court would have been required to impose a minimum sentence of 42 years and would have been authorized to impose a maximum sentence of 70 years without possibility of parole or other release from confinement. Because A.R.S. § 13–604(G) could have been constitutionally applied to these facts, we believe that the application of A.R.S. § 13–604.01(A) creates no unconstitutionally disparate treatment.

A startling proportion of violent crime in the United States is committed by habitual offenders. *See* NATIONAL COMMISSION OF THE CAUSES AND PREVENTION OF VIOLENCE, VIOLENT CRIME 44 (1969). Many states have responded to this public concern by enacting statutes like A.R.S. § 13–604(G) that punish multiple dangerous offenses with enhanced prison sentences. *See* Md.Crim.Law Art. 27, § 643B (Supp.1984) (mandatory life sentence without possibility of parole for 25 years for third dangerous offense; life without possibility of parole for fourth dangerous offense); N.Y. Penal Law § 70.08 (Supp.1984) (mandatory life imprisonment for third dangerous offense with minimum time served of 10 to 25 years for armed robbery); Wyo.Stat. § 6–10–201 (1977) (mandatory life sentence for violent offender with three prior felony offenses); Or. Rev.Stat. § 161.610(5)(c) (1985) (mandatory minimum imprisonment of thirty years for third dangerous offense); N.M.Stat.Ann. § 40A–29–3.1 (1978) (denying parole or release from confinement until minimum sentence is served for crime and adding five years for second dangerous offense); Ill. Rev.Stat. ch. 38, ¶ 33B–1 (Supp.1984) (mandatory life sentence for third dangerous offense); D.C.Code Ann. § 22–2302 (1981) (imposing additional punishment for crime committed with dangerous weapon of from 5 years to life without possibility of parole for 15 years); Wash.Rev.Code § 9.95.040 (in addition to any other penalty prescribed by law, there must be a sentence of 15 years without possibility of parole); Idaho Code § 19–2520A (Supp.1984) (additional mandatory consecutive sentence from 3 to 15 years for use of dangerous weapon in certain enumerated crimes including robbery).

Many states have also enacted statutes restricting parole or other release from confinement for dangerous offenders, especially those who commit armed robbery. *See* Colo.Rev.Stat. § 16–11–309 (Supp.1984) (denying probation or other release from confinement for minimum term of imprisonment for offenses by person using dangerous weapon during commission of certain enumerated crimes including robbery); Ga.Code § 16–8–41 (1984) (statute denying release from confinement for conviction of armed robbery); *Gunn v. State,* 244 Ga. 51, 257 S.E.2d 538 (1979) (this statute, as formerly codified, held constitutional as not cruel or unusual); Kan.Stat.Ann. §§ 21–4618 (1981); 22–3717(b) (Supp.1984) (denying probation or parole to those who commit dangerous offenses); *State v. Freeman,* 223 Kan. 362, 574 P.2d 950 (1978) (upholding constitutionality of this statute in murder case); Ky.Rev. Statute § 533.060 (1985) (dangerous offender may not receive probation or parole from sentence for armed offenses that include robbery); *Fultz v. Commonwealth,* 596 S.W.2d 28 (Ky.App. 1979) (this statute constitutionally applied to conviction for armed robbery); Mass. Gen.Laws Ann. Ch. 127 § 133 (Supp.1985) (statute denying parole for dangerous offenders until they have served ⅔ of the minimum sentence); *Bel v. Chernoff,* 390 F.Supp. 1256 (D.Mass.1975) (upholding the constitutionality of this statute as applied to an accused convicted of assault with a deadly weapon); Miss.Stat.Ann. § 47–7–3 (Supp.1984) (denying parole to robber who uses firearm); *Harris v. State,* 386 So.2d 393 (Miss.1980) (approving application of this statute to one convicted of armed robbery); Texas Code Crim.Pro.Ann. art. 42.-12(3)(1)(E) (Supp.1985) (denying probation to accused who commits armed robbery); *Rivas v. State,* 627 S.W.2d 494 (Tex.App. 1981) (upholding constitutionality of this statute); *cf.* Annot., 100 A.L.R.3d 431, 435 (1980) ("as to the validity of statutes prohibiting or restricting parole, probation, or suspension in cases of violent crimes, the courts have been uniform in upholding the statutes as against a number of different challenges".)

In *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the Supreme Court declared that:

> [The] primary goals [of a recidivist statute] ... are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felo-

nies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offenses but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes.

445 U.S. at 285, 100 S.Ct. at 1144–45, 63 L.Ed.2d at 397. A.R.S. § 13–604.01 did not require imposition of consecutive sentences in this case. Rather, the trial judge, after considering appellant's background and the circumstances surrounding the instant crimes, concluded that the accused was a danger to society. We have recognized such a concern for public safety to be a legitimate reason for imposing consecutive sentences under similar circumstances. *Cf. State v. Myers*, 117 Ariz. 79, 90–91, 570 P.2d 1252, 1263–64 (1977) (not cruel or unusual in sentencing offender to serve a sentence of 50 years to life for armed robbery to consider the defendant's use of a sawed-off shotgun, his progressive tendency toward violent crime and that he posed a danger to society); *State v. Meeker, supra*, (no abuse of discretion to impose three consecutive life sentences pursuant to A.R.S. § 13–604.01 because codefendant Meeker was a danger to society).

Additionally, in *State v. McNair, supra*, 141 Ariz. at 483–84, 687 P.2d at 1238–39 we concluded that a sentence of life without possibility of parole for 25 years was not unconstitutionally excessive punishment for one count of armed robbery committed while on release from confinement. Given the additional crimes and aggravating circumstances surrounding these crimes, we do not believe that three life sentences are unconstitutionally excessive.

4. *The Same or Similar Crimes in Other Jurisdictions*

Appellant's sentence is also proportional to sentences for the same crimes in other jurisdictions. For example, a *first* conviction for armed robbery may result in a sentence of: thirty years to life in Florida

(Fla.Stat.Ann. §§ 775.082 (Supp.1985) 812.-13 (1976)); ten to forty years in Arkansas (Ark.Stat.Anno. §§ 41–901, 41–1004, 41–2102 (1977)); ten to thirty years or life in Missouri (Mo.Rev.Stat. §§ 558.011 (Supp. 1985), 569.020 (1979)); ten years to life in Tennessee (Tenn.Code Ann. § 39–2–501 (1982)); ten years to life in Alabama (Ala. Code §§ 13A–5–6, 13A–8–41 (1975)); five to ninety-nine years without probation or parole in Louisiana (La.Rev.Stat.Ann. § 14:64 (1974)); five to ninety-nine years or life in Texas (Tex.Penal Code Ann. § 29.03, 12.32 (1974)); and five years to life in Idaho (Idaho Code §§ 18–6501 –6503 (1979)). This punishment does not take into account the other aggravating circumstances in this case. These aggravating factors include: the multiple counts of robbery, the aggravated assault, that appellant is a repeat offender, and that these offenses were committed while appellant was on parole and with accomplices. Nor does this punishment reflect the judge's determination that appellant is a danger to society. Especially when the asserted interest is the protection of society, and this concern is credibly supported by the record, we are reluctant to find that the sentence imposed is excessive.

We believe that repeat offenders in other states fare similarly. *Duncan v. State*, 267 Ark. 41, 588 S.W.2d 432 (1979) (four consecutive life sentences for four separate counts of armed robbery not cruel or unusual as applied to repeat offender); *State v. Howard*, 262 La. 270, 263 So.2d 32 (1972) (sentence of ninety-nine years without possibility of release from confinement not cruel or unusual as applied to repeat offender); *State v. Dunlap*, 298 N.C. 725, 259 S.E.2d 893 (1979) (sentence of life without possibility of parole for two counts of assault and armed robbery not cruel or unusual punishment); *McAdory v. State*, 354 So.2d 263 (Miss.1978) (sentence of ninety years for armed robbery not cruel or unusual as applied to repeat offender); *see also* Tenn.Code Ann. §§ 40–35–107(3), 40–35–109(b) (1982) (a defendant who commits an offense while on probation, parole or other release from confinement must be punished by the minimum sentence for the

crime plus half the difference between the minimum and maximum punishment). Accordingly, we find no cruel or unusual punishment.

In closing, we note that both parties agree that appellant was not properly credited with time served before sentencing. Although appellant was properly credited with 395 days on counts 1–4, appellant was credited with only 394 days on counts 5–10. Pursuant to our authority to correct such errors on appeal, A.R.S. § 13–4038, we credit appellant with 395 days on counts 5–10.

We have reviewed the record for fundamental error. A.R.S. § 13–4035; *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969). We have found none. Appellant's sentences are affirmed as modified.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON, HAYS and FELDMAN, JJ., concur.