735 P.2d 845

**STATE of Arizona, Appellee,**

v.

**Abraham H. STEIN, Appellant.**

**No. 1 CA–CR 9608.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 5, 1987.

Review Denied April 22, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Gary A. Fadell, Timothy C. Holtzen, Asst. Attys. Gen., Phoenix, for appellee.

Landau & Hamilton by Lynn Hamilton, Chandler, for appellant.

BROOKS, Judge.

Appellant (defendant) was convicted by a jury for the crimes of Importation of a Narcotic Drug (heroin), a class 2 felony, in violation of A.R.S. § 13–3406(A)(3); Conspiracy to Import a Narcotic Drug (heroin), a class 2 felony, in violation of A.R.S. § 13–1003(A); Possession of a Narcotic Drug for Sale (heroin), a class 2 felony, in violation of A.R.S. § 13–3406(A)(2); Conspiracy to Possess a Narcotic Drug for Sale (heroin), a class 2 felony, in violation of A.R.S. § 13–1003(A); Possession of a Dangerous Drug (methamphetamine), a class 4 felony, in violation of A.R.S. § 13–3404(A)(1); and Possession of Marijuana, a class 6 felony, in violation of A.R.S. § 13–3405(A)(1). He was sentenced to an aggravated term of fifteen years for three of the class 2 felonies, a term of nine years for possession of a narcotic drug for sale under A.R.S. § 13–604(M), the presumptive term of four years for possession of a dangerous drug, and eighteen months for possession of marijuana. All sentences were ordered to run concurrently, with credit for 356 days of presentence incarceration. Defendant appeals from these convictions and sentences and raises four issues:

(1) Did the trial court err in denying defendant's motion to suppress evidence?

(2) Was joinder of the many offenses in a single trial reversible error?

(3) Was the evidence sufficient to support the convictions for the conspiracy counts?

(4) Did the trial court improperly enhance sentences on three of defendant's convictions?

## SUPPRESSION OF EVIDENCE

Defendant first argues that the trial court should have granted his motion to suppress evidence. The basis of the suppression motion was the police entry into defendant's home prior to the arrival of a search warrant.

Considered in the light most favorable to upholding the judgment, the facts are as follows. At Kennedy Airport in New York, United States customs officers opened two packages which had been mailed from the "Philatelic Bureau" in Katmandu, Nepal to an address in Yuma, Arizona. The packages were found to contain about 1.5 pounds of heroin, having an estimated street value of 2.7 million dollars. Most of the heroin was removed by the officers, and an electronic beeper was placed inside one of the packages in order to continually monitor its location. Another substance resembling heroin was substituted for the heroin that had been removed. Arrangements were then made to forward that package to the addressee, "Anna Tarrity," in Yuma, Arizona. Arizona Department of Public Safety officers then set up surveillance and obtained both a search warrant and authority to record telephone numbers of incoming and outgoing calls for the residence where the package was to be delivered. The residence belonged to Anna Dalessio and her daughter Rebecca Ann Garrity.

Sometime after the package was delivered, a man and woman were seen leaving the residence. The couple got into a car bearing California license plates and drove away. Fearing that the couple might have the heroin and be headed for parts unknown, police stopped them for questioning. The female, Ms. Garrity, explained to police that her neighbor, Abraham Stein (defendant) had asked her to take delivery of the package because he would not be home to accept it. She told police that the package had been accepted for Stein and was still at her residence.

At that point, officers began surveillance of defendant's residence, which was located across the street from the Garrity home. That afternoon, officers observed defendant enter the Garrity home. They then asked Ms. Garrity to telephone her mother

in order to determine if defendant was taking the package. Ms. Garrity did so and advised the officers that defendant had indeed taken the package. The officers then observed defendant walking back to his house with two large items that appeared to be cardboard boxes. Defendant set the boxes down on the porch and entered his residence.

Meanwhile, an affidavit in support of a search warrant was being prepared in order to obtain authorization to search defendant's home. During this process, the officers saw defendant move the two boxes from the porch into his house. Fearing that defendant would discover the beeper inside the package and possibly destroy the evidence, officers entered defendant's home to secure it while awaiting the arrival of the search warrant, which was then in transit to a Yuma County magistrate for signature. The magistrate signed the search warrant approximately fifteen minutes after the officers had entered defendant's residence.

At the suppression hearing, the officers testified that they entered the residence solely to prevent anyone from entering or leaving the house, and to secure the premises. The officers made a "sweep" of the house to check for other occupants and then detained defendant. The officers further testified that nothing was seized and that no knowledge was gained in the security sweep. Their only action within defendant's residence at that time was to unload a 9 mm pistol, which was lying on a table. Within an hour, the search warrant arrived and the officers then conducted a search of the residence. During this search, a quantity of marijuana, a substance later determined to be methamphetamine, and the package containing the heroin and beeper were found. The package had been opened, reclosed, and hidden under a refrigerator.

Defendant filed a motion to suppress the evidence claiming that the entry by police to secure the residence was illegal. He further argued that in order to deter the allegedly common practice of "securing" crime scenes as a subterfuge in order to avoid the obtaining of a search warrant, the exclusionary rule should be applied to all of the evidence subsequently seized in this case. The trial court denied the motion, finding that exigent circumstances existed to justify the warrantless entry.

It is well settled that a trial court's ruling on a motion to suppress will not be disturbed absent a clear abuse of discretion. *State v. Fisher,* 141 Ariz. 227, 686 P.2d 750 (1984), *cert. denied,* 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984). We find no abuse of discretion in the instant case.

■ An entry by police to secure a residence is a search and seizure within the meaning of art. II, section 8 of the Arizona Constitution. *State v. Bolt,* 142 Ariz. 260, 689 P.2d 519 (1984). Thus, any warrantless entry by police into a home to secure it is per se illegal, unless the entry falls into one of a few, specifically established, "jealously and carefully drawn" exceptions. *Fisher,* 141 Ariz. at 237, 686 P.2d at 760. One such exception is action taken under "exigent circumstances." While "[m]ere incantation of the phrase, 'exigent circumstances,' will not automatically validate a warrantless search," *People v. Barndt,* 199 Colo. 51, 604 P.2d 1173, 1175 (1980), if there are articulable and particularized facts evidencing an exigency, a warrantless search is justified. *Bolt,* 142 Ariz. 260, 689 P.2d 519. Exigent circumstances allow immediate, warrantless searches when it reasonably appears that evidence may be removed or destroyed before it can be secured by the police. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

■ In the case at hand, the trial court relied, in part, on the fact that the package contained a beeper. The inference is reasonably drawn that if the package were opened, the beeper would be discovered, thus alerting defendant to the police and spurring possible destruction of the evidence. We find that this circumstance was sufficient to create an exigency justifying the warrantless entry.

## JOINDER OF OFFENSES

Defendant was named in two separate indictments. In Cause No. CR–12491, he was charged with Possession of a Dangerous Drug, (methamphetamine), and Possession of Marijuana. These charges stem from the contraband found in defendant's residence during the search for the package of heroin. In Cause No. CR–12369, defendant was charged with Possession of a Narcotic Drug (heroin); Importation of a Narcotic Drug (heroin); Conspiracy to Import a Narcotic Drug (heroin); Possession of a Narcotic Drug for Sale (heroin); and Conspiracy to Possess a Narcotic Drug for Sale.

Prior to trial, the state's motion to consolidate the two causes of action was granted. Defendant contends that it was error for the trial court to grant the state's motion because the offenses were not similar in character, were based upon different conduct, and were not part of a common scheme.

■ Rule 13.3(c), Arizona Rules of Criminal Procedure, provides that if different offenses are charged in separate proceedings, they may be joined by the court upon motion of either party, provided that the ends of justice will not be defeated thereby. Generally, a trial court possesses broad discretion in the area of joinder and severance. *State v. Perez*, 141 Ariz. 459, 687 P.2d 1214 (1984). If evidence of one charge is admissible in regard to the other charges, it is not an abuse of discretion to try the charges together. *State v. Henderson*, 116 Ariz. 310, 569 P.2d 252 (App.1977). Finally, pursuant to Rule 404(b), Arizona Rules of Evidence, while evidence of other crimes is not admissible to prove character of the accused or that he acted in conformity therewith, it may be admissible to prove intent, knowledge, identity, or absence of mistake.

■ Here, the quantity and the composition of the heroin differed from that of the marijuana and methamphetamine, yet each of the drugs was found in defendant's home when he was arrested. According to the defendant, the heroin was not his but must have been mistakenly sent to him by some unknown person. We find that the trial court could have properly permitted the state to introduce evidence of the marijuana and the methamphetamine in a separate trial on the heroin charges in order to prove absence of mistake. Evidence of defendant's possession of the marijuana and methamphetamine would have been relevant on the issue of whether defendant acquired the heroin through his own efforts, rather than as the result of a mistake by someone in Nepal who erroneously mailed it to him. Because this evidence would have been admissible at a separate trial involving the heroin charges, it was not error for the trial court to consolidate these causes of action for trial. *Henderson*, 116 Ariz. 310, 569 P.2d 252.

This same analysis is appropriate with regard to the charges involving the marijuana and methamphetamine. While defendant admitted that the marijuana was his, he denied any knowledge of the methamphetamine. Defendant therefore raised issues concerning his intent to possess the drug, his knowledge of its presence in his home, and the identity of the person who possessed it. Evidence of defendant's possession of heroin could have been relevant to demonstrate his knowledge, intent, and absence of mistake in possessing the methamphetamine. Rule 404(b), Arizona Rules of Evidence. At a separate trial on the methamphetamine charge, the trial court could therefore have legitimately allowed the state to introduce evidence of defendant's possession of heroin.

## SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was no evidence of a conspiracy to possess a narcotic drug for sale or to import a narcotic drug and urges reversal of those two convictions. Defendant's argument is without merit.

■ Reversal is not warranted unless there is a complete absence of probative evidence supporting the verdict. *State v. Girdler*, 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1983), *cert. denied*, 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984). A

reviewing court must view the evidence in the light most favorable to sustaining the conviction and must resolve all reasonable inferences against a defendant. *State v. Tison*, 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). The evidence as to the two conspiracy charges follows.

Defendant had previously spent time in Nepal and had business contacts there. Prior to the arrival of the heroin, he had made several long distance phone calls to Nepal. In the past, defendant had received other packages from Nepal and had asked a friend, Robert Doering, to accept such packages for him. On one such occasion, Doering suggested that defendant have the package sent to his mother's place of employment, the Mar-Kay's Dress Shop. Doering gave defendant the address. Later a package was delivered to the dress shop and was subsequently claimed by defendant. Three letters were then sent to Mar-Kay's from the "Philatelic Bureau" in Nepal. These letters made reference to "something" the author had previously sent to Doering c/o Mar-Kay's. The author inquired whether or not Doering liked "it" and asked whether or not he would like more. Another letter was thereafter received at Mar-Kay's, which made reference to the previous letter and to "our business."

Other evidence at trial established that while police were still inside defendant's residence after the heroin had been found, the telephone rang. Police answered the call and defendant, upon learning the caller's identity, told police that if "Mahdu" was in town, he was the one the police should be after or interested in.

■ The elements of a criminal conspiracy are: (1) an unlawful object to be accomplished; (2) a plan or scheme embodying means to accomplish that object; (3) an agreement or understanding between one or more persons that one of them will engage in conduct constituting the offense; and (4) an overt act. *State v. Avila*, 147 Ariz. 330, 336, 710 P.2d 440, 446 (1985). Existence of an unlawful agreement can be inferred from the overt conduct of the parties. *Id.* at 336, 710 P.2d at 446.

■ In this case, there was more than sufficient evidence from which the jury could reasonably have found that defendant engaged in a conspiracy with "Mahdu" and, or, the author of the letters, to import and sell heroin. Although there was no direct evidence of an agreement, there was ample circumstantial evidence. Defendant had been given the address of Mar-Kay's Dress Shop by his friend Robert Doering. Soon thereafter, a package was received from the "Philatelic Bureau" in Nepal at Mar-Kay's. Defendant later claimed that package. The letters later sent to Mar-Kay's discussed certain "arrangements." Subsequently, another letter was sent to Mar-Kay's by the same author containing other cryptic information. It stated: "So once you collecte [sic] money and you have to order postal stamps when I received your order I will send to you that goods instead of postal stamps."

Defendant had asked Ms. Garrity if he could have a package sent to her home since he would not be available to accept it. Later, the package containing heroin was sent to "Anna Tarrity" (a combination of defendant's neighbors' names, Rebecca Garrity and Anna Dalessio) in Yuma. From this evidence, a jury could reasonably infer that defendant had conspired with the author of the letter to import heroin into the United States for resale by giving a name and address to his co-conspirator at the Philatelic Bureau in Nepal. The co-conspirator would then send heroin to the address, in a disguised package which would later be claimed by defendant.

## SENTENCE ENHANCEMENT

■ Defendant was convicted of Possession of a Dangerous Drug, methamphetamine, and Possession of Marijuana in CR–12491. These convictions were used to enhance the sentences for Conspiracy to Import a Narcotic Drug, Conspiracy to Possess a Narcotic Drug for Sale and Importing a Narcotic Drug, in CR–12369. Defendant contends that it was improper for the trial court to enhance his sentences on

the conspiracy counts. He argues that if any conspiracy was committed, it was committed at the same time as the possessory offenses on November 16, 1984. Because the conspiracies were committed at the same time as the other offenses, he argues, they could not be used as prior convictions under A.R.S. § 13–604(H).

Defendant's argument is without merit. The evidence substantiating the conspiracy counts indicates that the conspiracies were not committed at the same time as the other offenses. To the contrary, the letters, phone calls, other packages, etc. occurred at different times, clearly indicating the existence of a conspiracy prior to the delivery of the package of heroin to defendant on November 16, 1984. The conspiracy counts were separate and distinct from the possession counts. Thus, pursuant to A.R.S. § 13–604(H) and *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980), the trial court was clearly correct.

*State v. Perkins*, 144 Ariz. 591, 699 P.2d 364 (1985), cited by defendant is inapposite. There, the court was faced with the issue of whether the defendant's crimes constituted "spree" offenses for which consecutive sentences were improper. In answering that question in the negative, the court stated:

> We decide in the present case only that a vague and potentially open-ended conspiracy to commit whatever crimes can be committed is alone insufficient to unite apparently distinct crimes.

*Id.* at 598, 699 P.2d at 371. There, the defendant, on three separate occasions, had robbed different groups of people all in a period of about one and one-half hours. All robberies occurred in generally the same area. The supreme court rejected the defendant's claim that he was a "spree" offender, holding that the robberies were three separate criminal incidents. *See also State v. Devine*, 150 Ariz. 507, 724 P.2d 593 (App.1986). In the instant matter, the conspiracies were separate and distinct crimes from the possession crimes and do not become "united" simply because a conspiracy has been shown.

For all the foregoing reasons, the convictions and sentences are affirmed.

CONTRERAS, P.J., and FROEB, C.J., concur.