746 P.2d 1304

**STATE of Arizona, Appellee,**

v.

**Elmer Philip VILD, Appellant.**

**1 CA–CR 9456.**

Court of Appeals of Arizona, Division 1, Department B.

May 5, 1987.

Review Denied Nov. 24, 1987.*

---

* Gordon, C.J., and Feldman, V.C.J., of the Supreme Court, voted to grant review on issue of application of A.R.S. § 13–604(H).

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Div., John B. Barkley, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

The appellant was convicted upon a trial by jury of conspiracy to sell cocaine and possession of cocaine of a value of more than $250 for sale. The state invoked the holding in *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980), so that appellant was sentenced as a repetitive offender to concurrent terms of imprisonment of 7.5 years for conspiracy and 11 years for possession for sale.

Taken in a light most favorable to sustaining the verdict below, the facts are as follows. On March 10, 1984, Phoenix police officer James Mavromatis entered a north Phoenix bar. Mavromatis was conducting an undercover investigation into gambling and narcotics and was posing as a jewelry salesman. While Mavromatis was sitting at the bar, the bartender told him that another customer, Vild, wished to speak to him. Mavromatis joined Vild, who offered to arrange a sale of one ounce of cocaine to Mavromatis for $2,200. Vild later introduced Mavromatis to Rick Navarrette, who actually possessed the cocaine.

Mavromatis completed his first purchase of cocaine from Navarrette on March 25, 1984. Over the next four months, Mavromatis made several other cocaine purchases from Navarrette. In July of 1984, Mavromatis and Navarrette discussed the purchase of eight ounces of cocaine at a price of $1,900 per ounce.

On July 27, 1984, Mavromatis met Navarrette at the Pointe Tapatio Resort in north Phoenix. Vild had rented a private room there for Navarrette's use. Mavromatis went to Navarrette's room, where Navarrette was diluting the cocaine to the agreed-upon strength. Saying that he didn't want to go get the money alone, Mavromatis lured Navarrette out of the room to Mavromatis' car. When Mavromatis gave a prearranged signal, police officers who had the location under surveil-

lance arrested Navarrette. Vild, who was armed with a pistol, had been waiting in a car parked nearby and officers also arrested him at the scene.

On appeal, Vild raises the following issues:

1. Did the trial court improperly impose a repetitive sentence pursuant to A.R.S. § 13–604(H) as to Count VII?

2. Was the appellant denied his right to present a defense where three defense witnesses were excluded from testifying?

3. Was it fundamental error to allow the prosecutor to comment in closing argument on the appellant's post-arrest silence?

4. Did the trial court err in refusing to give appellant's instruction on good character?

We affirm.

## REPETITIVE OFFENSE

■ The prosecution filed an allegation that in the event of a conviction, the conspiracy charge would constitute a prior conviction as to the possession for sale charge pursuant to *State v. Hannah,* for the purpose of enhancing the sentence under A.R.S. § 13–604. We observe that only Counts I and VII of the indictment represent charges against the appellant. In its allegation of a prior conviction, the state mistakenly referenced Count VI rather than Count VII. Both parties, however, have treated this as a clerical error and have proceeded as though the state's allegation had correctly referenced Count VII.

While the appellant acknowledges that the conspiracy began months before the final sale for which he was charged, he claims that the conspiracy was a continuing offense which was still being committed on the same occasion as the final sale. Relying on A.R.S. § 13–604(H) and citing *State ex rel. Collins v. Superior Court,* 142 Ariz. 280, 689 P.2d 539 (1984), the appellant contends that since the conspiracy and possession offenses were committed on the same occasion, they could only be counted as one conviction. He maintains that the trial court therefore erred in using the

conspiracy conviction to enhance his sentence on the possession for sale charge.

A.R.S. § 13–604(H) (Supp.1986) provides in part:

Convictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section.

In *State v. Perkins,* 144 Ariz. 591, 699 P.2d 364 (1985), *overruled on other grounds, State v. Noble,* 152 Ariz. 284, 731 P.2d 1228 (1987), our supreme court considered whether or not a number of robberies committed within a short period of time were committed on the "same occasion" within the meaning of A.R.S. § 13–604(H). In *Perkins,* the defendant had accosted and robbed three separate groups, consisting of four, two, and three people, respectively, in the course of a few hours. He was convicted of robbing each person. The trial judge sentenced him to four concurrent terms for the robbery of the first group; to two terms for the robbery of the second group, which were concurrent to each other but consecutive to the terms imposed for the first group; and to three terms for the third group, which were concurrent to each other but consecutive to the terms imposed for both the first and the second groups.

Perkins claimed that his crimes constituted "spree offenses" because he committed them pursuant to a common scheme to rob whomever he found in the area where the robberies occurred. In rejecting Perkins' argument, the supreme court considered the factors necessary to constitute the "same occasion" for purposes of A.R.S. § 13–604(H). The first factor the court looked to was whether there was a specific target offense as opposed to an overly vague conspiracy. While Perkins was not charged with conspiracy, the supreme court's language suggests that conspiracies and "target offenses"—by which it meant underlying substantive offenses—do not necessarily occur on the same "occasion".

The second factor considered in *Perkins* was the proximity in time and place of the crimes to each other. While this is not controlling, *see State v. Roylston,* 135 Ariz.

271, 660 P.2d 872 (App.1983), in the present case there was a difference of several months between the start of the conspiracy and the final sale. While it is true that the conspiracy was ongoing until the last contemplated act was concluded, *see State v. Cruz*, 137 Ariz. 541, 672 P.2d 470 (1983), it is also true that this conspiracy was a completed offense at many points earlier than the final arrest. *See State v. Gessler*, 142 Ariz. 379, 690 P.2d 98 (App.1984).

The third factor considered in *Perkins* in determining whether several acts occurred on the same occasion was whether or not the acts had the features of separate criminal incidents. In the present case, they did. For example, it is clear that the conspiracy count in this matter would not constitute double jeopardy as to the final sale count because the conspiracy was a separately chargeable offense. *State v. Olea*, 139 Ariz. 280, 678 P.2d 465 (App.1983).

Finally, the supreme court in *Perkins* found that classifying a vague and potentially open-ended conspiracy as an "occasion" would not promote the policies of § 13–604(H). The court noted that a former version of the statute had contained language forbidding consecutive punishment for acts committed "as part of a single continuing course of action" and that the legislature had deleted this language when it reinacted A.R.S. § 13–604(H). Acceptance of appellant's argument would therefore frustrate the policies of § 13–604(H) as our supreme court has interpreted it.

Our supreme court has recently had occasion to apply *Perkins* in a different context. In *State v. Henry*, 152 Ariz. 608, 734 P.2d 93 (1987), the appellant forced his way into the office of an apartment complex, took money, and raped the manager. He was convicted of armed burglary, armed robbery, and armed rape. The supreme court ruled that those offenses had been committed on the "same occasion" within the meaning of A.R.S. § 13–604(H) and were not "two or more offenses" for the purposes of enhancing a subsequent sentence. The court stressed that the crimes were committed at the same time, at the

same place, and upon the same victim, but acknowledged the impossibility of articulating an all-encompassing test of what constitutes the "same occasion". Here, as we have observed, it cannot be said that the conspiracy necessarily occurred at the same time and at the same place as the substantive crime of possession. Accordingly, we see nothing in *Henry* to suggest that our conclusion is incorrect.

## EXCLUSION OF DEFENSE WITNESSES

■ At trial, appellant defended on the basis that he did not know that Navarrette was dealing in drugs but thought that he was legally selling jewels. After the defense had begun the presentation of its case, defense counsel informed the court that he wanted to call three additional witnesses whose names he had not previously provided to the prosecution. These witnesses were appellant's relatives, who would have testified that the appellant had told them that he was innocent, and that he was a victim of circumstances. Defense counsel suggested that he would call the witnesses to rebut the prosecutor's cross-examination, which had created the inference that the appellant had recently fabricated his defense. The prosecutor, without specifying any reason, objected to the witnesses. The objection was sustained.

The appellant claims that the testimony of these defense witnesses was admissible and that their total exclusion was too harsh a sanction for late disclosure. The state admits that the appellant was cross-examined on the basis of recent fabrication, but claims that the witnesses were properly excluded because their proposed testimony was inadmissible hearsay. The appellant sought to offer prior consistent statements to rebut an express charge of recent fabrication. However, to escape exclusion as hearsay, the prior consistent statement must precede the motive to fabricate. *State v. Martin*, 135 Ariz. 552, 663 P.2d 236 (1983). Here, the appellant clearly made the prior consistent statements to family members after he was arrested and had the motive to fabricate a story. *Star-*

*kins v. Bateman,* 150 Ariz. 537, 724 P.2d 1206 (App.1986). The proffered statements were therefore inadmissible.

## PROSECUTORIAL MISCONDUCT

During closing arguments, the prosecutor made the following comments as to appellant's conduct at the time of his arrest:

> Imagine at the Pointe this person with this reputation at stake, and these licenses at stake, finding out that all this time he really hadn't financed diamonds at all but it was cocaine. He would be furious. He would say, 'I think there has been a mistake made here. I never had any idea this was cocaine. I can't explain this. I don't understand this. But look at this. I have been double-crossed. I can't believe this.'
>
> That's what your common sense tells you an innocent person would have done. But what does he say on the stand? 'No, I wasn't furious. No, I wasn't angry. No way. I was going to find out afterward if it was really true. I was going to find out if it was really cocaine.' That's not the emotional reaction an innocent person would have.

The appellant defended on the basis that he did not know that Navarrette was involved with drugs. He insisted he thought that he was simply loaning Navarrette the money to carry on his perfectly legal jewelry business. He claims that under *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 48 L.Ed.2d 91 (1976), it was fundamental error to allow the prosecutor to use his post-arrest silence for the purpose of impeachment. The state responds that the prosecutor only pointed out that the appellant's testimony on cross-examination revealed a reaction that was inconsistent with the way an innocent person would feel.

■ Appellant's counsel did not object to these comments during closing argument. He also failed to object during cross-examination to the questions which were the basis for these comments. Failure to object to any erroneous or improper statement during closing argument constitutes waiver unless the statement is funda-

mental error. *State v. Smith,* 138 Ariz. 79, 673 P.2d 17 (1983), *cert. denied,* 465 U.S. 1074, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984). While counsel is given wide latitude in closing argument to comment on the evidence and to argue all reasonable inferences, *see State v. McDaniel,* 136 Ariz. 188, 665 P.2d 70 (1983), prosecutorial comments on a defendant's post-arrest silence have been held to be fundamental error. *Doyle,* 426 U.S. at 619, 96 S.Ct. at 2245, 49 L.Ed.2d at 422; *State v. Anderson,* 110 Ariz. 238, 517 P.2d 508 (1973); *State v. Shing,* 109 Ariz. 361, 509 P.2d 698 (1973). Fundamental error, however, may be harmless error. *Anderson,* 110 Ariz. at 241, 517 P.2d at 511.

■ While the state might permissibly claim that appellant's failure to feel double-crossed by Navarrette *now* is an abnormal reaction, the prosecutor's statements in closing argument went beyond the scope of permissible comment because they sought to impeach the appellant on the basis of his failure to speak out in his own behalf at the time of his arrest or shortly thereafter. The appellant had testified that he did not know about the cocaine when he was arrested and that the police first informed him about it when he was in their custody shortly after his arrest. The prosecutor's comment described to the jury what an innocent person would have *said* when the truth was revealed. While the prosecutor did not flatly state that the appellant remained silent after his arrest, his description of what an innocent person would have said *when first informed* of his arrest for cocaine-related offenses implied that this is what the appellant also would have said at the time of his arrest or shortly thereafter if his testimony had been true. Consequently, it was a disguised comment on the appellant's post-arrest silence. Disguising the form of such comments does not make them permissible. *United States v. Elkins,* 774 F.2d 530, 537 (1st Cir.1985).

■ As we have noted, fundamental error may be harmless error. The state's case against the appellant was extremely strong. Detective Mavromatis testified

that he discussed cocaine sales with Vild. The bartender who introduced Vild to Mavromatis testified that Vild said that he had access to cocaine and that he wanted to be put in touch with potential buyers. Another witness, Connie Mulhern, testified that Vild told her on an occasion when he was drunk that he was financing drug deals.

In addition to this direct evidence, there was strong circumstantial evidence to suggest that Vild was involved with cocaine sales. Detective Mavromatis recorded a telephone call between himself and Vild which reflects that Vild was going to extraordinary lengths to check on Mavromatis' background. The conversation is cryptic in a manner that suggests the clandestine. At one point, when Vild was urging Mavromatis to give him the names of family members Vild could call to verify Mavromatis' identity, Mavromatis said that he would give him the names later. Vild responded:

Well that's no problem but ah, see, ah, what I, what I'd thought I'd do is take the information right away is the way he wanted me to do it, I mean if you were, if you were quote a 'narc' you could call and set up people back east to answer phones and say yes I'm so and so's brother; whatever ...

The evidence also revealed that Vild, along with Navarrette, had access to a safe deposit box in which the police found another locked box that contained cocaine. On one occasion, the police tailed Vild to the airport where he met Navarrette who was arriving from Florida. The two men behaved oddly on that occasion, not greeting one another and proceeding away from the gate separately. When Vild's home was searched after his arrest, two books were found—one entitled *The Pleasures of Cocaine* and the other, *Cocaine Handbook: An Essential Reference*. The latter is virtually a manual on how to test, adulterate, purify, and use cocaine.

Vild had innocent—but unconvincing— explanations for most of these bits of circumstantial evidence. Given the fact that the prosecutor's improper reference to appellant's post-arrest silence was indirect and not belabored, and that the incriminating evidence was overwhelming, any error was harmless beyond a reasonable doubt and not grounds for reversal.

## GOOD CHARACTER INSTRUCTION

The appellant offered an instruction on the use of character evidence which read:

Where a defendant has offered evidence of good character for truthfulness, honesty, and integrity, the jury should consider such evidence along with all the other evidence in the case.

If you are convinced beyond a reasonable doubt that the defendant is guilty of the crime charged, the defendant's prior good character will not excuse his crime and you should return a verdict of guilty.

However, evidence of a defendant's good character, inconsistent with those traits of character ordinarily involved in the commission of the crime charged, may give rise to a reasonable doubt and a verdict of not guilty, since the jury may think it improbable that a person of good character in respect to those traits would commit such a crime.

The trial judge refused the instruction because he found that it was an incorrect statement of the law. He offered to give the standard jury instruction on good character evidence instead. Defense counsel specifically declined the standard instruction, and no instruction on good character was presented to the jury. The instruction the court offered would have informed the jury:

Consider the evidence of good reputation together with all the other evidence. If you are convinced beyond a reasonable doubt that the defendant is guilty of the crime charged, you must not use the evidence of good reputation as an excuse to acquit the defendant.

Appellant claims that the proposed instruction was a correct statement of the law in that good character alone may generate a reasonable doubt, citing *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976). In *Childs*, however, the court made clear its disapproval of instructions which place undue emphasis upon good character evi-

dence. The court approved an instruction requiring the jury to consider good character evidence "together with" rather than apart from the other evidence. It said:

> We believe this instruction correctly states the law, and places character evidence in the perspective it should be— that of evidence which is entitled to no more or no less weight than any other item of evidence in the case.

*Id.* at 322, 553 P.2d at 1196. The issue has been settled in Arizona. The trial judge did not err. *See also State v. Adams,* 145 Ariz. 566, 573, 703 P.2d 510, 517 (App.1985) and *State v. Duran,* 118 Ariz. 239, 247–48, 575 P.2d 1265, 1273–74 (App.1978).

■ The appellant's counsel declined the judge's offer to give the standard good character instruction instead of the one the defense offered. As a general rule, a defendant who does not object to the trial court's failure to give an instruction waives the right to object on appeal. *State v. Baker,* 126 Ariz. 531, 532–33, 617 P.2d 39, 40–41 (App.1980). However, a trial court does have a duty to instruct on matters vital to the rights of a defendant even if the defendant has not requested instructions on these matters. *Id.* at 533, 617 P.2d at 41.

[8] Failure to instruct as to the effect of character evidence may constitute fundamental error in some cases. *See United States v. Logan,* 717 F.2d 84 (3d Cir.1983) (failure to instruct was reversible error where defendant requested charge on character evidence and defense turned entirely on defendant's credibility). However, this should not necessarily be the case where the appellant's attorney has requested—apparently for tactical reasons—that no instruction be given. Even if we assume for the sake of argument that failure to instruct on the effect of character evidence generally constitutes fundamental error, we would find that the failure in this case, for the reasons discussed above in our consideration of the state's improper comment on the appellant's silence, was harmless beyond a reasonable doubt.

For the foregoing reasons, the sentence and conviction are affirmed.

CORCORAN and GREER, JJ., concur.