IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,      )
                           )      2 CA-CR 1995-0014
              Appellee,    )      DEPARTMENT A
                           )
         v.                )      O P I N I O N
                           )
MIKAL OMAR RASUL,          )
                           )
              Appellant.   )
                           )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-41583

Honorable John S. Leonardo, Judge

AFFIRMED IN PART;
VACATED AND REMANDED IN PART

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Alan L. Amann                          Tucson
                                                       Attorneys for Appellee

Jeffrey G. Buchella                                             Tucson
                                                       Attorney for Appellant

H O W A R D, Presiding Judge.

¶1        After a jury trial, appellant Mikal Rasul was convicted of one count each of attempted fraudulent scheme and artifice and forgery. The trial court sentenced him to consecutive, presumptive, enhanced prison terms of 11.25 and ten years, respectively, to be served consecutively to prison terms he was already serving. On appeal, Rasul argues the trial court violated his Sixth Amendment right to counsel and improperly enhanced his sentences based on two prior felony convictions instead of one.[1] We affirm the convictions but vacate the sentences and remand for resentencing.

**Background**

¶2        We view the facts and reasonable inferences therefrom in the light most favorable to sustaining the convictions. *See State v. Newnom*, 208 Ariz. 507, ¶ 2, 95 P.3d 950, 950 (App. 2004). In 1990, Rasul was convicted of one count each of arson of an occupied structure and arson of property having a value of more than $100, and two related counts of conspiracy to commit arson, arising from a fire Rasul and an accomplice had started outside a bank. On appeal, this court reversed one of the conspiracy convictions but otherwise affirmed the convictions and sentences. *State v. Rasul*, No. 2 CA-CR 90-0907 (memorandum decision filed Aug. 30, 1994). In 1993, Rasul filed a petition for post-conviction relief, pursuant to Rule 32, Ariz. R. Crim. P., claiming the convictions were unlawful because the charges had previously been dismissed with prejudice. He attached

---

[1]Rasul raises other issues that do not meet the criteria for publication. *See* Ariz. R. Sup. Ct. 111(b). We address them in a separate, contemporaneously filed memorandum decision. *See* Ariz. R. Sup. Ct. 111(h).

to the petition a falsified minute entry and hearing transcript indicating the charges had been dismissed with prejudice.

¶3    Based on his submission of the falsified documents, the state charged Rasul with attempted fraudulent scheme and artifice, forgery, and attempted second-degree escape. After eighteen court-appointed attorneys had been allowed to withdraw for various reasons, and Rasul refused to participate in the trial, Rasul was tried in absentia and without counsel representing him. The trial court directed a verdict of acquittal on the attempted second-degree escape charge, and Rasul was convicted of attempted fraudulent scheme and artifice and forgery. After obtaining federal habeas corpus relief because he did not have counsel when he initially appealed in this case, Rasul now appeals.

**Right to Counsel**

¶4    Rasul argues the trial court violated his Sixth Amendment right to counsel. He contends that the record does not support the conclusion he waived that right and that any waiver should have been preceded by a hearing. We review a Sixth Amendment denial of right to counsel claim de novo. *See State v. Glassel*, 211 Ariz. 33, ¶ 59, 116 P.3d 1193, 1210 (2005); *United States v. Goldberg*, 67 F.3d 1092, 1097 (3d Cir. 1995) (reviewing de novo issue of waiver or forfeiture of Sixth Amendment right to counsel). But we defer to the trial court's factual findings unless they are clearly erroneous. *See Mack v. Cruikshank*, 196 Ariz. 541, ¶ 6, 2 P.3d 100, 103 (App. 1999); *see also State v. Chavez*, 208 Ariz. 606, ¶ 2,

3

96 P.3d 1093, 1094 (App. 2004) (same standard applies in reviewing denial of motion to suppress).

¶5        After allowing Rasul's eighteenth court-appointed attorney to withdraw, the trial court refused to appoint Rasul another attorney, although it appointed advisory counsel. It concluded that Rasul had "waive[d]" his "right to the appointment of different counsel." When Rasul refused the assistance of advisory counsel and chose not to remain present at his trial, the trial proceeded in absentia and without counsel representing Rasul.

¶6        "The Sixth Amendment guarantees criminal defendants the right to representation by counsel." *State v. Torres*, 208 Ariz. 340, ¶ 6, 93 P.3d 1056, 1058 (2004); *see also Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 2527 (1975). But a defendant "can effectively forgo that assistance through his actions." *State v. Hampton*, 208 Ariz. 241, ¶ 7, 92 P.3d 871, 873 (2004). Where, as here, the defendant does not expressly waive his right to counsel, he still may forgo the right to counsel if he waives it by conduct or forfeits it. Before a defendant may waive by conduct his right to counsel, the court must both "warn[] the defendant that further disruptive conduct may result in the loss of the right to counsel and explain[] the implications of such a waiver." *Id.* But forfeiture, only appropriate in cases of "severe misconduct or a course of disruption aimed at thwarting judicial proceedings," does not require a prior warning. *Id.* ¶ 8.

¶7        The state first contends Rasul waived his right to counsel by conduct. Rasul does not contest the state's contention that the trial court warned Rasul that if he persisted

4

in refusing to work with counsel, the court would eventually stop appointing new counsel. But the record before us does not reflect that the court expressly warned Rasul of the dangers of self-representation. Under *Hampton*, waiver by conduct requires that the court explain to the defendant "the risks and consequences of waiving the right to counsel." *Id.* n.3; *see also Daniel Y. v. Ariz. Dep't of Econ. Sec.*, 206 Ariz. 257, ¶ 16, 77 P.3d 55, 59 (App. 2003). Thus, Rasul did not waive by conduct his right to counsel.

**¶8** The state next contends Rasul forfeited his right to counsel. The cases cited in *Hampton* "suggest that forfeiture is reserved for the most severe cases of misconduct and should result only when less restrictive measures are inappropriate." 208 Ariz. 241, ¶ 8, 92 P.3d at 874. In *Hampton*, the defendant had issued credible death threats to two different appointed attorneys. *Id.* ¶¶ 3-4. The supreme court stated that "it might be possible to conclude Hampton's conduct is so egregious as to constitute forfeiture of his right to counsel on appeal," but chose to remand for the appointment of new appellate counsel and specifically warned Hampton of the consequences of any future misconduct. *Id.* ¶¶ 9-10. The court ultimately "le[ft] open . . . the question of whether certain serious misconduct by a criminal defendant can result in forfeiture of the right to counsel without prior warning." *Id.* ¶ 11.

**¶9** Although no Arizona court has expressly found forfeiture of the right to counsel, courts in other jurisdictions have addressed the issue in various circumstances. For example, courts have generally held that a defendant who physically assaults his counsel has

5

forfeited the right to counsel. *See, e.g., Gilchrist v. O'Keefe*, 260 F.3d 87, 90, 99-100 (2d Cir. 2001); *United States v. Leggett*, 162 F.3d 237, 240, 251 (3d Cir. 1998); *State v. Montgomery*, 530 S.E.2d 66, 68-69 (N.C. Ct. App. 2000). *But see King v. Superior Court*, 132 Cal. Rptr. 2d 585, 589-90, 600 (Ct. App. 2003) (forfeiture not appropriate where defendant assaulted and threatened counsel because trial court did not provide sufficient due process protections).

¶10        But courts have also found forfeiture when the defendant's conduct does not rise to the level of physical violence. *See Bultron v. State*, 897 A.2d 758, 766 (Del. 2006) ("Violence is not the *sine qua non* of extremely serious misconduct."). In *Bultron*, the defendant had directed "continuing profanity and insulting conduct" at his counsel. *Id.* Deferring to the trial court's findings "that Bultron's behavior fell just short of violence and was intended to force [counsel] to withdraw," the court upheld a finding of forfeiture. *Id.*

¶11        In *United States v. McLeod*, 53 F.3d 322, 325 (11th Cir. 1995), the defendant, after having dismissed his first attorney, had verbally abused and threatened to harm his second attorney. He had also "threatened, on at least four occasions, to sue [his attorney], and had attempted to persuade him to engage in unethical conduct in connection with the case." *Id.* The court held McLeod forfeited the right to counsel at a hearing on a motion for new trial. *Id.* at 326.

¶12        In *State v. Carruthers*, 35 S.W.3d 516, 533-44, 550 (Tenn. 2000), a capital case, the defendant threatened and refused to cooperate with three sets of appointed

6

attorneys. The trial court recognized the defendant's "'ploy' to delay the trial." *Id.* at 550. The Tennessee Supreme Court concluded the defendant both waived by conduct and forfeited his right to counsel. *Id.* at 549-50. It stated that, "in situations such as this one, a trial court has no other choice but to find that a defendant has forfeited the right to counsel; otherwise, an intelligent defendant 'could theoretically go through tens of court-appointed attorneys and delay his trial for years.'" *Id.* at 550, *quoting State v. Cummings*, 546 N.W.2d 406, 420 (Wis. 1996).

¶13 In *Commonwealth v. Thomas*, 879 A.2d 246, ¶¶ 32-33 (Pa. Super. Ct. 2005), the defendant had threatened his counsel and insisted that his counsel present no defense at trial. On appeal, the court found that the defendant had "forfeited his right to counsel through his pattern of serious misconduct, abuse, threats, and utter failure to collaborate in his own defense." *Id.* ¶ 32.

¶14 Here, the trial court found that Rasul had threatened the personal safety of two of his attorneys and that his "repeated demands for the appointment of different counsel [we]re an attempt to manipulate the criminal justice system for delay or some other advantage." We defer to the trial court's findings because the record supports them. *See Mack*, 196 Ariz. 541, ¶ 6, 2 P.3d at 103; *Bultron*, 897 A.2d at 766 (trial court's finding that defendant's "behavior . . . was intended to force [his counsel] to withdraw" was "entitled to deference").

¶15 Rasul accused several appointed attorneys in open court of unsatisfactory representation and admitted filing complaints with the state bar against some of them. He also suggested some of the attorneys "believe[d] the State's evidence" and were in fact working against him. He accused one attorney of "disrespect[ing] [his] wife" and lying. Then, in addressing the court concerning a motion to withdraw filed by David Sherman, Rasul's eighteenth court-appointed attorney, Rasul stated that he had a "conflict" problem with twelve or thirteen lawyers that had been appointed to represent him. He stated that none of them "g[o]t [his] case," suggesting that they did not want to use the defense he wanted to use. And he stated he was going to apply the same standard to any future attorneys appointed to represent him.

¶16 Sherman stated in open court, after expressing fear for his personal safety, that he would not continue to represent Rasul, even if it meant being held in contempt of court. In a subsequent affidavit, filed the same day the trial court dated its minute entry allowing Sherman to withdraw and denying new counsel, Sherman avowed that Rasul had told him, "I guarantee 100% you are off my case. If you don't do it, I'll do it"; "I don't care if I pick up new charges. I'm going to do whatever it takes to make sure you are off my case"; and "I know you know what I am saying. I'll fix it so you can't go to court with me ever again."

¶17 Rasul's threatening behavior and refusal to cooperate with multiple attorneys can be nothing less than part of a "'ploy' to delay trial." *Carruthers*, 35 S.W.3d at 550; *see also Bultron*, 897 A.2d at 766 (noting defendant's conduct fell just short of violence and

8

was intended to force his attorney to withdraw). As we have noted, he accused several attorneys of unsatisfactory representation and filed complaints with the state bar. *Cf. McLeod*, 53 F.3d at 325 (defendant's threats to sue counsel were factors in forfeiture decision). We conclude that Rasul's conduct was egregious enough to amount to forfeiture of the right to counsel.

¶18        Our supreme court in *Hampton* suggested forfeiture "should result only when less restrictive measures are inappropriate." 208 Ariz. 241, ¶ 8, 92 P.3d at 874. The trial court took the least restrictive measure in response to Rasul's initial improper behavior by reappointing one counsel after another. Given the court's conclusion that Rasul was "manipulat[ing] the criminal justice system for delay or some other advantage," appointing new counsel would only have permitted Rasul to continue that tactic. Additionally, forcing Sherman to continue representing Rasul apparently would have been futile. Finally, the trial court appointed advisory counsel, with whom Rasul refused to consult. Under the circumstances, there was no less restrictive measure available to the court. Accordingly, we agree with the state that Rasul forfeited his right to counsel.

¶19        Rasul contends the trial court should have conducted a *Faretta*[2] inquiry at a hearing before finding Rasul had waived his right to counsel. But, although the court's

---

[2]*Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525 (1975). In *Faretta*, the Supreme Court held that a defendant wishing to waive the right to counsel must do so "'knowingly and intelligently'" and "should be made aware of the dangers and disadvantages of self-representation." *Id.* at 835, 95 S. Ct. at 2541.

ruling used the term "waiver," Rasul's actions are more properly viewed in terms of forfeiture.[3] *See Goldberg*, 67 F.3d at 1100 (when trial court finds "waiver" without discussing *Faretta* implications, the court's decision "rest[s] on notions of forfeiture, not waiver"). Forfeiture does not require the type of "'searching or formal' inquiry" Rasul suggests.

## Prior Convictions

¶20 Rasul argues the trial court erred by enhancing his sentences with two prior felony convictions because the prior convictions occurred on the same occasion. Although Rasul failed to raise this issue below, and thus forfeited his right to appellate relief absent fundamental error, *see State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005), "[t]he improper use of two prior convictions rather than one for purposes of sentence enhancement constitutes fundamental error." *State v. Derello*, 199 Ariz. 435, ¶ 6, 18 P.3d 1234, 1236 (App. 2001); *see also State v. Kelly*, 190 Ariz. 532, ¶ 5, 950 P.2d 1153, 1155 (1997). "A trial court's determination that a prior conviction constitutes an historical prior felony conviction for purposes of sentence enhancement involves a mixed question of law

---

[3]It is not surprising that the trial court referred to waiver rather than forfeiture, given that the distinction between the two concepts in this context was not well-defined in the case law at the time the court issued its order in 1994. *Goldberg* and *McLeod*, both decided in 1995, were perhaps the first cases to recognize that distinction. *See Goldberg*, 67 F.3d at 1100. And the Arizona case explaining the proper procedure, *State v. Hampton*, was not issued until 2004.

10

and fact." *Derello*, 199 Ariz. 435, ¶ 8, 18 P.3d at 1236. We review that question de novo. *Id.*

¶21    The state alleged that Rasul had previously been convicted of arson and conspiracy to commit arson of property having a value of more than $100.[4] The jury found the allegation proven and the trial court imposed presumptive sentences enhanced by two prior convictions. *See* A.R.S. § 13-604(C), (D).

¶22    "Convictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section." § 13-604(M). Unlike A.R.S. § 13-116, which bars "consecutive sentences for a single act," *State v. Siddle*, 202 Ariz. 512, ¶ 16, 47 P.3d 1150, 1155 (App. 2002), § 13-604(M) "recogniz[es] that separate crimes can be committed on the 'same occasion.'" *State v. Sheppard*, 179 Ariz. 83, 84, 876 P.2d 579, 580 (1994), *quoting State v. Sheppard*, 178 Ariz. 24, 29, 870 P.2d 1120, 1125 (App. 1993) (Jacobson, J., dissenting). "The common meaning of the phrase 'same occasion' is same time, same place." *State v. Henry*, 152 Ariz. 608, 611, 734 P.2d 93, 96 (1987).

---

[4]Rasul is correct that this court reversed his conviction for conspiracy to commit arson of property having a value of more than $100. *State v. Rasul*, No. 2 CA-CR 90-0907, at 8 (memorandum decision filed Aug. 30, 1994). But, in light of our conclusion that the trial court erroneously enhanced his sentences based on two prior convictions, we need not address Rasul's argument that the trial court improperly enhanced his sentences based on a conviction that had been reversed. Similarly, we decline his request that we take judicial notice of the record on appeal in his prior case.

> No "all-encompassing test" exists to determine whether different crimes occur on the "same occasion." Rather, a court must consider the spatial and temporal relationship between the two crimes, whether the crimes involved the same or different victims, whether the crimes were continuous and uninterrupted, and whether they were directed to the accomplishment of a single criminal objective.

*Derello*, 199 Ariz. 435, ¶ 9, 18 P.3d at 1236, *quoting Henry*, 152 Ariz. at 612, 734 P.2d at 97. "When all of the offenses are aimed at furthering a single criminal objective, . . . the offenses generally will constitute the 'same occasion,'" *Sheppard*, 179 Ariz. at 85, 876 P.2d at 581, even if not all factors are "strictly or individually satisfied." *Kelly*, 190 Ariz. 532, ¶ 9, 950 P.2d at 1156.

¶23 Rasul's prior convictions were for arson and conspiracy to commit arson, based on a fire he and an accomplice had started outside a bank in 1989. The record before us suggests Rasul committed the conspiracy and arson on the same day. But it appears that the conspiracy was committed either at Rasul's house or in his codefendant's car while the two were driving before committing the arson at a bank. Thus, the "spatial and temporal relationship between the two crimes," *Derello*, 199 Ariz. 435, ¶ 9, 18 P.3d at 1236, although fairly close, may not independently support a finding that they occurred on the same occasion. *See Kelly*, 190 Ariz. 532, ¶ 6, 950 P.2d at 1155 ("'the time period involved . . . [must be] very brief'"), *quoting State v. Noble*, 152 Ariz. 284, 286, 731 P.2d 1228, 1230 (1987); *cf. State v. Perkins*, 144 Ariz. 591, 595, 597, 699 P.2d 364, 368, 370 (1985), *overruled on other grounds by Noble*, 152 Ariz. at 288, 731 P.2d at 1232 (crimes that

occurred in different places within one-and-one-half hours of each other did not occur on same occasion).

¶24     Nevertheless, the victims of the crimes—the bank and anyone inside it—were the same. And, we must analyze these factors in conjunction with the "'single criminal objective' test." *Kelly*, 190 Ariz. 535, ¶ 9, 950 P.2d at 1156, *quoting Sheppard*, 179 Ariz. at 84, 876 P.2d at 580. Because both crimes related to the same ultimate act, the offenses were "aimed at furthering a single criminal objective." *Sheppard*, 179 Ariz. at 85, 876 P.2d at 581. Given that the crimes involved the same victims and furthered a single criminal objective, an evaluation in light of all the factors supports the conclusion that the offenses occurred on the same occasion for purposes of § 13-604(M).

¶25     The state relies on *State v. Vild*, 155 Ariz. 374, 746 P.2d 1304 (App. 1987), to support its argument that the conspiracy and arson convictions were not committed on the same occasion for purposes of § 13-604(M). In *Vild*, Division One of this court concluded that conspiracy to sell cocaine and possession of cocaine for sale were not committed on the same occasion for purposes of § 13-604(M), then § 13-604(H). 155 Ariz. at 375-77, 746 P.2d at 1305-07. But the facts here differ from those in *Vild*. In *Vild*, the conspiracy began months before Vild was arrested for possession, and "was a completed offense at many points earlier than the final arrest." *Id.* at 376-77, 746 P.2d at 1306-07. Here, as noted above, the conspiracy and the arson appear to have occurred the same day. And although it is not altogether clear from the factual recitation in *Vild*, the court suggested

13

that the conspiracy in that case was open-ended, rather than an agreement to commit a single, specific offense. *See id.* at 375-77, 746 P.2d at 1305-07. Here, in contrast, the conspiracy had a specific target offense.

¶26 The court in *Vild* relied on *Perkins*, in which our supreme court distinguished between cases involving "a specific target offense (or offenses)" and those involving "merely an overly vague conspiracy." 144 Ariz. at 597, 699 P.2d at 370. Here, the conspiracy was not overly vague, but rather was one designed to commit a single, specific act. The conspiracy and arson did not have the "features of separate criminal incidents," *id.*, but instead were "aimed at furthering a single criminal objective." *Sheppard*, 179 Ariz. at 85, 876 P.2d at 581.

¶27 Additionally, the fact that the offenses occurred at different times on the same day does not preclude a finding that they occurred on the same occasion. In *Sheppard*, the supreme court held that prior convictions for trafficking and theft based on events that occurred at different times and locations on the same day and involving different victims occurred on the same occasion. *Id.* at 83-85, 876 P.2d at 579-81. Here, the offenses occurred on the same day, apparently in different locations, but involving the same victims. Most important, they were both aimed at a single criminal objective: setting a fire outside the bank. Applying the single criminal objective test in conjunction with the factors listed in *Noble*, *see Kelly*, 190 Ariz. 532, ¶ 9, 950 P.2d at 1156, we conclude that the offenses

14

occurred on the same occasion for purposes of § 13-604(M).  We therefore vacate Rasul's sentences and remand for resentencing.[5]

**Conclusion**

¶28     For the foregoing reasons, as well as those set out in our separate memorandum decision, we affirm Rasul's convictions.  Because the trial court improperly enhanced his sentences based on two prior convictions instead of one, however, we vacate his sentences and remand for resentencing.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:

_____
J. WILLIAM BRAMMER, JR., Judge

_____
PHILIP G. ESPINOSA, Judge

---

[5]Because we vacate the sentences, we do not address Rasul's Eighth Amendment argument.