IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*

*v.*

DEREK JESUS RAMOS,
*Appellant.*

No. 2 CA-CR 2014-0396
Filed April 21, 2016

---

Appeal from the Superior Court in Pinal County
No. S1100CR201301638
The Honorable Bradley M. Soos, Judge Pro Tempore

**AFFIRMED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Kathryn A. Damstra, Assistant Attorney General, Tucson
*Counsel for Appellee*

Flores & Clark, LLC, Globe
By Daisy Flores
*Counsel for Appellant*

---

**OPINION**

Presiding Judge Vásquez authored the opinion of the Court, in which Chief Judge Eckerstrom and Judge Miller concurred.

V Á S Q U E Z, Presiding Judge:

¶1 After a jury trial, Derek Ramos was convicted of attempted possession of a dangerous drug by fraud, forgery, and taking the identity of another. The trial court sentenced him to concurrent prison terms of six years for each count. On appeal, Ramos argues the court erred by precluding an alibi witness that he failed to timely disclose. He also argues the court erred by denying his request for a continuance "based on retention of new counsel." For the following reasons, we affirm.

**Factual and Procedural Background**

¶2 We view the evidence in the light most favorable to sustaining the convictions. *State v. Wright*, 214 Ariz. 540, ¶ 2, 155 P.3d 1064, 1065 (App. 2007). In September 2013, Ramos visited a pharmacy in Apache Junction and presented a prescription for alprazolam, commonly known as Xanax. The pharmacy technician asked for his identification and made a copy for their records. The technician thought Ramos acted "[o]verly friendly" during the exchange, which she viewed as a "red flag[]," and informed the pharmacist of her concern. The pharmacist believed the prescription resembled another forged prescription recently presented at another pharmacy: its format did not match the doctor's "prescriptions in the past," the doctor's address was not complete, and the signature "didn't look consistent" with that doctor's usual signature. The pharmacist informed Ramos that she would need to "contact the doctor to verify the prescription, and [because] it was after hours, it would have to be the next day." Ramos "started to get anxious" and asked if he could have the prescription back, but the pharmacist declined, and Ramos left the pharmacy.

¶3 Less than thirty minutes later, Ramos called the pharmacy and, speaking with an Indian accent, claimed to be the prescribing doctor who was calling to verify the prescription. He then returned to the pharmacy, was turned down again, and escorted out. The next morning, the pharmacist confirmed with the doctor listed on the prescription that it had been falsified and contacted the police.

**¶4**        In October 2013, Ramos was charged with attempted possession of a dangerous drug, forgery, and taking the identity of another person.  The trial court set a jury trial date for August 5, 2014.  On July 22, 2014, Ramos filed a notice of defenses and witnesses, which, for the first time, identified Ramos's father as a potential witness, and provided the prosecutor with a telephone number to contact his father.  The father apparently would be called to testify that he and Ramos had been coaching a softball team at the time of the offense.  During a hearing on July 28, the state objected to this witness "based on the timeliness" and later filed a motion in limine to preclude the witness on the same ground, which the court granted.

**¶5**        Also during the July 28 hearing, Ramos submitted a stipulation to substitute his public defender with private counsel, Rachelle Ferraro, and requested a continuance because Ferraro would not "be ready to proceed to trial on August 5th."  The trial court denied the motion to continue, but stated Ferraro could "opt in" as counsel if she could be ready by the trial date.

**¶6**        At trial, Ferraro participated as *Knapp* counsel.[1]  The jury found Ramos guilty as charged, and the trial court sentenced him as described above.  This appeal followed.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## Untimely Disclosure

**¶7**        Ramos argues the trial court erred by precluding the testimony of his father because of his late disclosure.  We review a court's sanction for an untimely disclosure for an abuse of discretion.  *State v. Moody*, 208 Ariz. 424, ¶ 114, 94 P.3d 1119, 1149 (2004).

**¶8**        Rule 15.2(b), Ariz. R. Crim. P., directs that a defendant "shall provide a written notice to the prosecutor specifying all defenses as to which the defendant intends to introduce evidence at

---

[1]*Knapp v. Hardy*, 111 Ariz. 107, 111, 523 P.2d 1308, 1312 (1974) (counsel privately retained by relative or friend may associate with public defender in representing criminal defendant).

trial, including . . . alibi." And, "[s]imultaneously" with that notice, the defendant must provide the state with "[t]he names and addresses of all persons, other than that of the defendant, whom the defendant intends to call as witnesses at trial, together with their relevant written or recorded statements." Ariz. R. Crim. P. 15.2(c)(1). This disclosure must occur within the earlier of forty days after arraignment or ten days after the state's disclosure. Ariz. R. Crim. P. 15.2(d)(1).

¶9 When an untimely disclosure occurs, the opposing party may move for sanctions, in which case the trial court "shall impose any sanction it finds appropriate." Ariz. R. Crim. P. 15.7(a). In doing so, courts should consider "the vitality of the evidence to the proponent's case; the degree to which the evidence or the sanctionable conduct has been prejudicial to the opposing party; whether the sanctionable conduct was willful or motivated by bad faith; and whether a less stringent sanction would suffice." *State v. Meza*, 203 Ariz. 50, ¶ 32, 50 P.3d 407, 414 (App. 2002); *see* Ariz. R. Crim. P. 15.7(a). The sanction "should be proportionate to the harm caused" and "cure that harm to the maximum practicable extent." *State v. Krone*, 182 Ariz. 319, 322, 897 P.2d 621, 624 (1995). Thus, if "a party engages in 'willful misconduct, such as an unexplained failure to do what the rules require,'" preclusion may be an appropriate remedy. *State v. Naranjo*, 234 Ariz. 233, ¶ 34, 321 P.3d 398, 407 (2014), *quoting State v. Killean*, 185 Ariz. 270, 271, 915 P.2d 1225, 1226 (1996); *see also State v. Thompson*, 190 Ariz. 555, 558, 950 P.2d 1176, 1179 (App. 1997) (precluding sole witness supporting defense theory due to unexcused, untimely disclosure).

¶10 We find *Killean* instructive here. In that case, the defendant was arrested at an airport with a suitcase containing several pounds of marijuana. 185 Ariz. at 270, 915 P.2d at 1225. The defendant disclosed his defense—that he had transported the suitcase for a friend—"for the first time at trial" and testified consistent with that defense. *Id.* However, the trial court denied the admission of "corroborative documentary evidence as a sanction for [the] defendant's violation of discovery rules by failing to reveal the existence of the evidence until trial." *Id.*

¶11 Our supreme court affirmed the defendant's convictions, noting the "unexplained failure to do what the rules require" supported the sanction of preclusion, even if the trial court had determined there was no bad faith on the part of defense counsel. *Id.* at 271, 915 P.2d at 1226. Other remedies, such as declaring a mistrial or continuing the trial, "would defeat the important interest in efficient judicial administration." *Id.* And, preclusion was proportionate to the harm caused by the violation: "The violation prevented the prosecution from locating . . . a rebuttal witness. . . . The loss of rebuttal was balanced by the loss of corroboration." *Id.*

¶12 In this case, it is undisputed that the testimony of Ramos's father was significant to his defense.[2] And, there is no evidence that defense counsel acted in bad faith: He filed the late disclosure the same day Ramos informed him that his father could testify in support of an alibi defense. However, Ramos's failure to assert a possible alibi defense from the time he was charged in October 2013 until his disclosure in July 2014, despite his close relation to the alibi witness, belies his argument that "[t]here is no evidence in the record that the late disclosure . . . was willful." *See Naranjo*, 234 Ariz. 233, ¶ 35, 321 P.3d at 408 (willfulness implied by "pervasive lack of diligence").

¶13 Moreover, the record indicates the trial court considered "the impact" of the late disclosure on the state and the sanction on Ramos's defense. The late disclosure not only surprised the state with a new witness; it introduced an entirely new defense theory. And, although the prosecutor managed to interview the father after the disclosure, the state did not have an opportunity to search for rebuttal witnesses—a task made difficult by the father's inability to provide the names of others alleged to be on the softball team.

---

[2]The state conceded in its motion in limine below that the testimony would be "vital" to the defense. We discount the state's arguments on appeal to the extent they contradict this previous position. *Cf. State v. Towery*, 186 Ariz. 168, 182, 920 P.2d 290, 304 (1996) (party may not "assert[] one position at trial and another on appeal").

During a pretrial hearing, the prosecutor stated that his office had "tried to find out whether or not there [was] a roster anywhere . . . if there was a city league or whatnot," but was unsuccessful. Thus, the late disclosure caused a significant disadvantage to the state, and preclusion was an appropriate remedy within the court's discretion. *See Killean*, 185 Ariz. at 271, 915 P.2d at 1226; *Krone*, 182 Ariz. at 322, 897 P.2d at 624.

**¶14**      Ramos nevertheless argues that his case is "analogous" to *State v. Smith*, 140 Ariz. 355, 681 P.2d 1374 (1984). There, our supreme court reversed the trial court's order excluding a defendant's second alibi witness on late-disclosure grounds. *Id.* at 358-59, 681 P.2d at 1377-78. But *Smith* is distinguishable. The late disclosure in that case was not due to a lack of diligence and the state was not prejudiced. *Id.* at 359, 681 P.2d at 1378. Smith had timely disclosed his alibi defense, and the state had already interviewed his first alibi witness and was aware of the existence of the second one. *Id.* Ramos's reliance on *Smith* is unavailing. Accordingly, the trial court did not err by precluding the witness's testimony as a sanction for the disclosure violation. *See Moody*, 208 Ariz. 424, ¶ 114, 94 P.3d at 1149.

### Motion to Continue

**¶15**      Ramos argues the trial court erred by denying his request for a continuance "based on retention of new counsel." He maintains that this error "served to deny . . . his right to counsel of choice." Generally, "[w]e review a trial court's denial of a motion to continue for an abuse of discretion." *State v. Forde*, 233 Ariz. 543, ¶ 18, 315 P.3d 1200, 1212 (2014). However, we review de novo Sixth Amendment claims regarding a defendant's right to counsel. *State v. Rasul*, 216 Ariz. 491, ¶ 4, 167 P.3d 1286, 1288 (App. 2007).

**¶16**      "'[A]n indigent criminal defendant possesses rights under the Sixth Amendment [of the United States Constitution] and Article 2, Section 24 [of the Arizona Constitution], to choose representation by non-publicly funded private counsel . . . .'" *State v. Aragon*, 221 Ariz. 88, ¶ 4, 210 P.3d 1259, 1261 (App. 2009), *quoting Robinson v. Hotham*, 211 Ariz. 165, ¶ 16, 118 P.3d 1129, 1133 (App. 2005) (alterations in *Aragon*). Nevertheless, this right "is not

absolute, but is subject to the requirements of sound judicial administration." *State v. Hein*, 138 Ariz. 360, 369, 674 P.2d 1358, 1367 (1983). "A trial court has 'wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.'" *Aragon*, 221 Ariz. 88, ¶ 5, 210 P.3d at 1261, *quoting United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006). In weighing these competing interests, courts must consider

> whether other continuances were granted; whether the defendant had other competent counsel prepared to try the case; the convenience or inconvenience to the litigants, counsel, witnesses, and the court; the length of the requested delay; the complexity of the case; and whether the requested delay was for legitimate reasons or was merely dilatory.

*Hein*, 138 Ariz. at 369, 674 P.2d at 1367.

**¶17**     As an initial matter, Ramos relies on *United States v. Brown*, 785 F.3d 1337, 1349 (9th Cir. 2015), for the proposition that "any denial of the defendant's motion because of 'the demands of [the court's] calendar' would not 'suffice as an administration-of-justice basis for denial of the constitutional right to discharge . . . counsel.'" This language, however, is taken out of context. *See Robinson*, 211 Ariz. 165, ¶ 14, 118 P.3d at 1133 ("[A] defendant may be denied counsel of his or her choice if that attorney['s] . . . appointment would cause an unreasonable delay in the proceedings to allow adequate preparation."); *see also United States v. Rivera-Corona*, 618 F.3d 976, 979 (9th Cir. 2010) (same). The district court in *Brown* "never said that concern for its calendar was its reason for denying the motion" and, in fact, "repeatedly offered to continue the case" in lieu of appointing new counsel. *Brown*, 785 F.3d at 1347-49.

**¶18**     Ramos also argues his circumstances were "[s]imilar[]" to those in *Aragon*, in which this court reversed the trial court's denial of a motion to continue for newly retained private counsel to prepare for trial. 221 Ariz. 88, ¶¶ 1-2, 6, 210 P.3d at 1260-62. We disagree. In that case, we determined that the majority of the factors

laid out in *Hein*, 138 Ariz. at 369, 674 P.2d at 1367, were absent: The defendant had not "sought nor been granted any prior continuances," the state did not assert that a continuance would be inconvenient for witnesses, there was no "victim anxious for a resolution," and "although appointed counsel was apparently competent and prepared to try the case, th[at] alone could not justify the court's denial of [the defendant's] request for a continuance." *Aragon*, 221 Ariz. 88, ¶ 6, 210 P.3d at 1261-62. Moreover, the state did not dispute "that [the defendant] had legitimate reasons for his request." *Id.* ¶ 6. The defendant in *Aragon* had "identified 'a communication issue' with appointed counsel and explained that, although he had been in touch with [private counsel] since his arrest, he had not asked for [counsel] to be substituted earlier because he 'didn't have funds to hire him.'" *Id.* ¶ 3. Thus, we concluded the "court's denial of a continuance . . . constituted an 'unreasoning and arbitrary' adherence to its schedule without due regard for Aragon's legitimate request." *Id.* ¶ 9, *quoting Morris v. Slappy*, 461 U.S. 1, 11-12 (1983).

¶19 In contrast, the trial court here was focused principally on the dilatory nature of Ramos's "last-minute substitution of counsel" and the impact the delay would have on the state's case. Ramos had stated he wanted "to look into retaining private counsel" as early as November 2013, when he requested a continuance of a pretrial matter. But Ferraro made an appearance eight months later, and only eight days before trial. Ramos was not in custody during this time and, unlike in *Aragon*, offered no explanation for the delay. The court also noted it had "just denied [another] motion to continue trial" earlier that month and suggested Ramos's new motion merely was an extension of the first:

> I set these . . . hearings with a purpose. It's not just to show up and entertain motions to continue. [These] hearings are substantive motion hearings. There should be motions in limine filed already; there should be any pretrial motions that need to be filed. We're here today to discuss what

[it is] going to take to get this thing ready
for trial on Tuesday. It's not the time for a
last-minute substitution of counsel and
motion to continue when I've already
denied it.

Accordingly, although no prior continuance of the trial date had
been granted, the record supports the court's implicit finding that
Ramos's motion was for the purpose of delay. Moreover, the state
suggested during the hearing that it had already arranged for four of
its five witnesses to testify.[3] And, although Ferraro suggested more
investigation and preparation was necessary to present Ramos's
case, nothing in the record suggests his court-appointed defense
counsel was not prepared or that this case was particularly complex.

**¶20** Most importantly, the trial court's ruling did not
prohibit Ferraro from representing Ramos. We therefore reject
Ramos's suggestion that the court's ruling denied his right to
representation by retained counsel. Notwithstanding the court's
denial of the motion to continue, Ferraro in fact did represent Ramos
prior to and at trial. Ferraro participated significantly during a
pretrial hearing; made objections and conducted cross-examination
during the trial; participated at the priors hearing; and argued on
Ramos's behalf during sentencing. *See State v. Burns*, 237 Ariz. 1,
¶ 13, 344 P.3d 303, 314 (2015) ("Although denying counsel adequate
time to prepare a case for trial may deny the defendant a substantial
right, time constraints by themselves do not create prejudice.")
(internal citation omitted). Accordingly, the court did not abuse its
discretion by denying the motion to continue, *see Forde*, 233 Ariz.
543, ¶ 18, 315 P.3d at 1212, and Ramos was not denied his Sixth
Amendment right to counsel of choice, *see Rasul*, 216 Ariz. 491, ¶ 4,
167 P.3d at 1288.

---

[3]The fifth witness, the doctor, had been out of the country
until the start of trial and only appeared after the trial court
compelled him to do so.

## Disposition

¶21      For the foregoing reasons, we affirm Ramos's convictions and sentences.