NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

RANDOLPH JACKSON, JR., *Appellant.*

No. 1 CA-CR 18-0237
1 CA-CR 18-0583
1 CA-CR 19-0095
(Consolidated)
FILED 6-6-2019

Appeal from the Superior Court in Yavapai County
No.  P1300CR201400227
The Honorable Michael R. Bluff, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

Law Offices of David W. Dow, Phoenix
By David W. Dow
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

J O N E S, Judge:

¶1      Randolph Jackson, Jr., appeals his convictions and sentences for one count each of sale or transportation of a narcotic drug, possession or use of drug paraphernalia, and misdemeanor resisting arrest.  He also appeals two orders denying motions to modify his sentence.  For the following reasons, we modify the sentencing minute entry to reflect that the sentence imposed for possession of drug paraphernalia is a slightly mitigated term.  In all other respects, Jackson's convictions and sentences are affirmed.

### FACTS AND PROCEDURAL HISTORY

¶2      In March 2014, two Yavapai County Sheriff's Office (YCSO) deputies parked in separate patrol vehicles monitored the roadway for traffic violations.[1]  One deputy used a radar gun to determine the vehicle in which Jackson was a passenger was traveling eighty miles per hour in a seventy-five-mile-per-hour zone.  He also saw the vehicle cross over the fog line and watched as the driver seemed to hide from his view.  When the deputy pulled onto the roadway, the vehicle slowed to seventy miles per hour.

¶3      When the deputy stopped the vehicle, he smelled an odor of marijuana and asked the driver and Jackson to exit.  Jackson stated they were returning from Nevada and California to Oklahoma, where he had rented the vehicle.  When asked about the smell of marijuana, Jackson claimed he legally smoked marijuana in California.  Around this time, the deputy learned from dispatch that the rental car company in Oklahoma had reported the vehicle stolen.

---

[1]      "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Harm*, 236 Ariz. 402, 404, ¶ 2 n.2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

¶4        After being arrested and informed of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), Jackson became belligerent and combative, forcefully pushing and pulling away from the deputies. Once Jackson was subdued, a search incident to arrest revealed approximately ten ounces of heroin in the insoles of Jackson's shoes. After obtaining a search warrant for Jackson's phone, the deputies found photos and text messages indicative of drug trafficking.

¶5        The State charged Jackson with sale or transportation of a narcotic drug, possession or use of drug paraphernalia, theft of means of transportation, and resisting arrest. Later, the trial court granted the State's motion to dismiss the theft of means of transportation count without prejudice. Three months after his arrest, Jackson contacted a lieutenant with YCSO to report that the deputies had acted improperly. In that conversation, Jackson admitted he possessed heroin at the time.

¶6        A jury convicted Jackson of all remaining counts, and the trial court sentenced him as a repetitive offender to an aggregate term of fifteen years' imprisonment. Jackson timely appealed his convictions and sentences. While that appeal was pending, Jackson filed two unsuccessful motions to amend his sentence, alleging he was improperly sentenced as a repetitive offender, and timely appealed the orders disposing of those motions. The cases were consolidated on appeal and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1),[2] 13-4031, and -4033(A)(1), (3). *See State v. Pill*, 5 Ariz. App. 277, 278-79 (1967) (concluding an order denying a motion to modify or vacate a judgment in a criminal case made within a reasonable time after judgment is appealable as an order made after judgment affecting the substantial rights of the party).

## DISCUSSSION

### I.        Suppression of the Evidence

¶7        Before trial, Jackson moved to suppress all evidence obtained from the traffic stop. Of his many pleadings, most centered on whether the traffic stop was illegal and whether the deputies had given inconsistent or false statements in prior hearings; none addressed whether the search was conducted incident to a lawful arrest or in violation of *Miranda*.

---

[2]        Absent material changes from the relevant date, we cite the current version of rules and statutes.

### A. Traffic Stop

¶8 Jackson argues the trial court abused its discretion by refusing to suppress evidence obtained after an illegal traffic stop. We review the denial of a motion to suppress for an abuse of discretion, *State v. Butler*, 232 Ariz. 84, 87 ¶ 8 (2013), but review the court's legal conclusions *de novo*, *State v. Booker*, 212 Ariz. 502, 504, ¶ 10 (App. 2006). In doing so, we consider only the evidence presented at the suppression hearing,[3] viewing the facts in the light most favorable to upholding the court's ruling. *Butler*, 232 Ariz. at 87, ¶ 8.

¶9 To conduct a lawful traffic stop, an officer must have articulable, reasonable suspicion that the person committed a traffic violation. *State v. Salcido*, 238 Ariz. 461, 464, ¶ 7 (App. 2015) (citing *State v. Starr*, 222 Ariz. 64, 69, ¶ 11 (App. 2009)). The subjective intentions of the officer do not impact the validity of a traffic stop, so long as he reasonably suspects that a driver committed a traffic violation. *Whren v. United States*, 517 U.S. 806, 813 (1996). One officer's testimony, without corroboration, is sufficient to support a determination of reasonable suspicion. *State v. Montano*, 121 Ariz. 147, 149 (App. 1978) (noting that the "strength or weakness of testimony is not measured by the number of witnesses").

¶10 In Arizona, a driver must not travel "on a highway at a speed greater than is reasonable and prudent under the circumstances." A.R.S. § 28-701(A). Driving at speeds above the posted limit creates the presumption of a violation of A.R.S. § 28-701(A). *State v. Rich*, 115 Ariz. 119, 121 (App. 1977) (citations omitted). Additionally, a driver travelling on a roadway "divided into two or more clearly marked lanes" must drive "as nearly as practicable entirely within a single lane." A.R.S. § 28-729(1); *see also State v. Acosta*, 166 Ariz. 254, 257 (App. 1990) (finding that crossing the dividing line constituted unsafe lane usage).

¶11 The first YCSO deputy testified at the suppression hearing that he observed at least two traffic violations, providing him with reasonable suspicion to initiate the traffic stop. The second deputy confirmed that he had seen the first using the radar gun to measure the car's speed, the car appeared to be speeding, and the car's tires crossed the fog line. Though the driver testified to the contrary, we defer to the trial court's

---

[3] The trial judge who presided over the initial suppression hearing later recused herself from the case and asked that a second hearing be conducted. Accordingly, we only consider the evidence presented at the second hearing to resolve Jackson's claims.

assessment of witness credibility and resolution of conflicts in the evidence. *State v. Olquin*, 216 Ariz. 250, 252, ¶ 10 (App. 2007). Based upon this record, the traffic stop was supported by an articulable, reasonable suspicion and the court did not abuse its discretion in denying Jackson's motion to suppress.

### B. Search Incident to Arrest

**¶12** Jackson claims the trial court erred in failing to suppress evidence obtained as a result of an illegal *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1 (1968). Because Jackson failed to directly advance this argument below, we limit our review to fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018) (citing *State v. Henderson*, 210 Ariz. 561, 567, ¶ 20 (2005)). Moreover, the record does not support Jackson's contention that the search of his shoes was merely a *Terry* stop. Rather, Jackson had been placed under arrest for theft of means of transportation, and therefore, the search was incident to arrest. Warrantless searches are permissible if conducted incident to a lawful arrest but must be limited to the arrestee's person and the area within his immediate control. *Chimel v. California*, 395 U.S. 752, 762-63 (1969), *abrogated on other grounds by Arizona v. Gant*, 556 U.S. 332, 338 (2009).

**¶13** Jackson argues that because the theft of means of transportation charge was later dropped, there was no basis for the search. Contrary to this assertion, the record does not affirmatively show a crime did not occur, but merely that the State could not proceed upon the theft charge at the time of trial. In moving to dismiss the theft of means of transportation count, the State avowed that a material witness suffered from Alzheimer's disease and the other out-of-state witnesses had not been cooperative. Nonetheless, at the time of the search, the deputies had probable cause to arrest Jackson after being advised the vehicle had been reported stolen. Thus, Jackson's shoes were removed and searched incident to a lawful arrest, *id.*, and the trial court did not commit error, fundamental or otherwise.

### C. *Miranda* Warnings

**¶14** Jackson contends the trial court erred in allowing the State to present evidence obtained in violation of *Miranda*. However, the only statements that Jackson identifies as improperly admitted are those he made regarding whether the officers could search his phone. Because the record shows the officers obtained a warrant before searching Jackson's phone, we find no error on this basis.

¶15          To the extent Jackson intended to challenge the admission of other statements he made in the course of his arrest, he has failed to adequately present such a claim and it is therefore waived. *See State v. Carver*, 160 Ariz. 167, 175 (1989).

## II.      Exculpatory Evidence and Alleged Prosecutorial Misconduct

¶16          Jackson filed multiple discovery requests and motions to compel the State to produce dash camera recordings and disciplinary records for the two deputies.

¶17          In early pretrial hearings, the YCSO deputy testified his dash camera equipment was broken at the time of the offenses. At a subsequent hearing, the deputy testified his dash camera equipment was not broken, but he could not download recordings. The State later disclosed that the deputy resigned from YCSO prior to an internal investigation that "revealed numerous discrepancies and inconsistencies in [his] statements and claims pertaining to the condition of his issued camera and audio recording devices." Upon *in camera* review of the internal investigation records, the trial court ordered multiple memoranda and transcripts pertaining to the investigation be disclosed to Jackson, to which the State complied.

¶18          Jackson filed additional motions to compel the State to produce any possible metadata from the deputy's "in-car system hard drives" and allow for inspection of the patrol vehicle. The State avowed that all available evidence pertaining to the dash camera equipment had been disclosed and, per YCSO, any possible metadata would have been overwritten within months of the date of the offense, which was nearly two years prior to the State or YCSO learning of the issue involving the deputy's equipment. The trial court found that the State had complied with disclosure requirements, adding that any possible metadata or inspection of the vehicle would not uncover any new information. Jackson's motions for dismissal and sanctions were denied.

¶19          At trial, the YCSO deputy testified that his dash camera equipment was not broken but he could not download recordings to a disc. The deputy denied any attempts to cover up misconduct. Jackson extensively cross-examined the deputy as to his disciplinary records, prior inconsistent statements, and failure to preserve recordings of the arrest. Jackson then testified on his own behalf, claiming both deputies used racial slurs, assaulted him, stole his money, and planted the heroin in his shoes. He further testified that the deputies destroyed or withheld recordings to

hide their own misconduct. Although the driver of the vehicle testified at the suppression hearing, she invoked her right against self-incrimination for the purpose of trial and did not testify.

**¶20** The trial court denied Jackson's request to provide the jury with a *Willits* instruction, *see State v. Willits*, 96 Ariz. 184 (1964), finding that the recordings and possible metadata, if available, would not tend to exonerate Jackson of the crimes.

### A. *Brady* Violations

**¶21** Jackson argues the trial court erred in denying his motions to compel, strike, and dismiss related to the State's purported failure to preserve and disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963). We review the court's ruling on an alleged *Brady* violation for an abuse of discretion. *See State v. Arvallo*, 232 Ariz. 200, 206, ¶ 36 (App. 2013).

**¶22** Under *Brady*, the State must disclose all exculpatory evidence in its possession that is material to the issues of guilt or punishment. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976), and *Brady*, 373 U.S. at 87); *see also* Ariz. R. Crim. P. 15.1(b)(8), (f)(2)-(3) (disclosure requirements). To establish a *Brady* violation, a defendant must show: (1) the undisclosed evidence is favorable to the defense; (2) the State suppressed the evidence; and (3) nondisclosure caused prejudice. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). If the State fails to timely disclose exculpatory evidence, the trial court may impose sanctions based upon the degree of prejudice caused and the availability of less stringent remedies. *State v. Ramos*, 239 Ariz. 501, 504, ¶ 9 (App. 2016) (citing what is now Ariz. R. Crim. P. 15.7(b)).

**¶23** Although the YCSO deputy provided inconsistent statements regarding his dash camera equipment, it is unclear from the record whether any recordings or related metadata were ever created or, if created, what they would have captured. The "mere possibility" that the items would have aided Jackson's defense is not enough to establish a *Brady* violation. *Agurs*, 427 U.S. at 109-10. Additionally, the prosecutor timely disclosed the deputy's disciplinary records and the jury heard that the deputy had resigned just prior to a finding that he was inconsistent and, at the very least, lacked competency related to the use of his dash camera equipment. Nothing from the record indicates undisclosed exculpatory evidence was withheld from the jury. *See State v. Jessen*, 130 Ariz. 1, 4 (1981) ("When

previously undisclosed exculpatory information is revealed at the trial and is presented to the jury, there is no *Brady* violation.").

## B.     Prosecutorial Misconduct

**¶24**          Jackson alleges the prosecutor: (1) elicited perjured testimony; (2) intimidated a defense witness; and (3) improperly vouched for a deputy. We review the trial court's ruling on a motion to dismiss for prosecutorial misconduct for an abuse of discretion. *State v. Trani*, 200 Ariz. 383, 384, ¶ 5 (App. 2001). To establish a claim of prosecutorial misconduct, a defendant must show "the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Goudeau*, 239 Ariz. 421, 465, ¶ 193 (2016) (quoting *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998)). As arms of the State, prosecutors must not only disclose exculpatory evidence, they may not knowingly elicit false testimony, *State v. Rivera*, 210 Ariz. 188, 190, ¶ 11 (2005), or use the prestige of the government to improperly vouch for the credibility of the State's witnesses, *State v. Doerr*, 193 Ariz. 56, 62, ¶ 24 (1998) (quoting *State v. Dumaine*, 162 Ariz. 392, 401 (1989)).

**¶25**          To the extent Jackson argues the prosecutor purposefully elicited perjury associated with the dash camera equipment, this contention is not supported by the record. At trial, the YCSO deputy admitted having provided inconsistent statements about his equipment but claimed he believed it was malfunctioning in some way. Eliciting such testimony did not amount to prosecutorial misconduct. *Rivera*, 210 Ariz. at 190, ¶ 11.

**¶26**          Jackson's additional claims that the prosecutor committed witness intimidation and vouching are similarly without merit. The prosecutor's request that the trial court appoint counsel for the driver of the vehicle, who was previously listed as Jackson's codefendant, in no way amounted to witness intimidation. Regarding vouching, Jackson cites the following comments made by the prosecutor to the second YCSO deputy regarding Jackson's allegations that during the arrest the deputies used a racial slur and beat him: "Did either — look, you're among friends. We'll keep it our secret. Did either of those things happen?" Though ill-advised, the prosecutor's comment that the deputy was "among friends," did not rise to the level of vouching; it neither placed the prestige of the government behind its witness, nor suggested that other information not presented to the jury supported his testimony. *See Doerr*, 193 Ariz. at 62, ¶ 24.

### C.    *Willits* **Instruction**

**¶27**    Jackson further contends the trial court's failure to provide the jury with a *Willits* instruction requires reversal.  We review a court's refusal to provide a *Willits* instruction for an abuse of discretion.  *State v. Glissendorf*, 235 Ariz. 147, 150, ¶ 7 (2014) (citing *State v. Bolton*, 182 Ariz. 290, 309 (1995)).

**¶28**    A defendant is entitled to a *Willits* instruction, if he proves that "(1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice."  *State v. Smith*, 158 Ariz. 222, 227 (1988) (citing *State v. Perez*, 141 Ariz. 459, 464 (1984)).  It is not enough for the defendant to merely speculate that lost or destroyed evidence may have been helpful to the defense.  *Glissendorf*, 235 Ariz. at 150, ¶ 9.

**¶29**    Though the record shows the YCSO deputy failed either to record or preserve dash camera recordings, we are not persuaded that a recording of the traffic stop would have tended to exonerate Jackson.  The State produced other witnesses who corroborated the deputy's version of events.  Additionally, the State elicited testimony that the dash camera would have only recorded the traffic stop but not the search of Jackson's person, which occurred in the back seat of the patrol vehicle.  Jackson presented his version of events, and the jury was tasked with determining the credibility of the witnesses.  On this record, the trial court did not abuse its discretion in refusing to provide a *Willits* instruction.

## III.    *In Propria Persona* **Motions**

**¶30**    Jackson filed a litany of pleadings *in propria persona*, both as a self-represented litigant and while represented by an attorney.  Through the course of this case, Jackson went through six different attorneys before eventually choosing to represent himself at trial; the trial court informed Jackson of the possible repercussions of such a decision.  At Jackson's request, the court granted numerous continuances and deadline extensions.

### A.    **Untimely Motions**

**¶31**    Jackson argues the trial court erred in setting a substantive motion deadline and denying various motions as untimely.  Though the court has the discretion to extend filing deadlines, parties must file motions no later than twenty days before trial, unless the court directs otherwise, and any untimely motions may be precluded.  Ariz. R. Crim. P. 16.1(b)-(c).  "The preclusion sanction in Rule 16.1(c) exists in order to insure orderly

pretrial procedure in the interests of expeditious judicial administration." *State v. Vincent*, 147 Ariz. 6, 8 (App. 1985).

¶32 Here, the record shows the trial court extended the filing deadline on multiple occasions, regularly ruled upon the merits of untimely motions, and acted within its discretion in setting a filing deadline in the interest of judicial economy.

### B. Removal from Docket

¶33 Jackson argues the trial court's removal of motions filed *in propria persona* from the docket constituted prejudicial error. "When a defendant concurrently has self-representation and representation by counsel, hybrid representation results." *State v. Roscoe*, 184 Ariz. 484, 498 (1996) (citing *State v. Murray*, 184 Ariz. 9, 27 (1995)). A criminal defendant has no constitutional right to hybrid representation, and it is disfavored as a matter of law. *State v. Cornell*, 179 Ariz. 314, 325 (1994); *State v. Rickman*, 148 Ariz. 499, 504 (1986). "Whether to allow such hybrid representation remains within the sound discretion of the trial judge." *Cornell*, 179 Ariz. at 325 (citation omitted).

¶34 Jackson filed several pleadings *in propria persona* while represented by an attorney. The trial court acted within its broad discretion in removing the pleadings from the docket.

### C. Motion to Continue During Trial

¶35 Jackson contends that the trial court erred in denying his motion to continue, filed during trial, to allow him to obtain private counsel. "We review the court's interpretation of a constitutional right *de novo*," *State v. Aragon*, 221 Ariz. 88, 90, ¶ 4 (App. 2009), and its denial of a request for a continuance in order to substitute counsel for an abuse of discretion, *State v. Hein*, 138 Ariz. 360, 368 (1983) (citing *State v. Sullivan*, 130 Ariz. 213, 215 (1981)).

¶36 A trial court is given "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (citation omitted). Our supreme court has stated that "[w]hether an accused's constitutional rights are violated by the denial of a request for a continuance depends on the circumstances present in the particular case." *Hein*, 138 Ariz. at 369 (citing *United States v. Casey*, 480 F.2d 151, 152 (5th Cir. 1973)). In making this determination, we look to the number of other

continuances granted, the length of the requested delay, the inconvenience to litigants, jurors, and witnesses, and the sincerity of the request. *Id.*

¶37 Here, the trial court granted multiple continuances, appointed numerous attorneys to the case, and, prior to the start of trial, fully briefed Jackson on the consequences of representing himself. Jackson's request was made following the State's presentation of its case-in-chief with a jury already empaneled. On this record, the court did not abuse its discretion in denying Jackson's requested continuance. *See State v. Dixon*, 226 Ariz. 545, 553, ¶ 39 (2011).

## IV.     Use of Prior Felony Conviction

¶38 Before trial, the State provided written notice that it intended to use four prior felony convictions for the purposes of impeachment, sentencing enhancement, and as an aggravating factor. The State later disclosed copies of certified records of two prior out-of-state felony convictions: (1) aiding and abetting racketeering, a felony offense for which Jackson was sentenced to five years' imprisonment in 2004 (the 2004 conviction); and (2) assault with a deadly weapon, a felony offense for which Jackson was sentenced to six years' imprisonment in 1981 (the 1981 conviction).

¶39 At trial, the State advised it planned to impeach Jackson with the 2004 conviction. Over Jackson's objection, the trial court found the 2004 conviction fell within the ten-year limit, ordered that the nature of the offense be sanitized for the jury, and instructed the jury to consider the 2004 conviction only for purposes of witness credibility, not evidence of guilt. Jackson ultimately admitted to the 2004 conviction, testifying that the "last time I had trouble was in 2003." The State did not refer to the 2004 conviction in cross-examination, nor mention it in closing argument.

¶40 At sentencing, the State presented certified records of both the 1981 and 2004 convictions, noting Jackson had admitted to the 2004 conviction during trial. The State argued the 2004 conviction was a prior historical felony conviction given the term of imprisonment imposed but failed to present any evidence as to Jackson's release date. Jackson objected, arguing the convictions were not historical. Agreeing with the State, the trial court found the 2004 conviction to be historical for purposes of sentencing enhancement.

¶41 Along with aggravating factors found by the jury, the trial court considered the 1981 conviction as an aggravating factor. The court sentenced Jackson as a category two repetitive offender, imposing a slightly

aggravated term for sale or transportation of a narcotic drug concurrent to a slightly mitigated term for the possession of drug paraphernalia. *See infra* Part IV.

### A.    Impeachment

**¶42**        Jackson argues the trial court erred in allowing the State to impeach him with the 2004 conviction under Arizona Rule Evidence 609. We review the admission of a prior conviction for impeachment purposes for an abuse of discretion. *State v. King*, 110 Ariz. 36, 39 (1973).

**¶43**        As relevant here, Rule 609 allows a party to impeach a witness with a prior conviction if it was for a crime "punishable by death or by imprisonment for more than one year." Ariz. R. Evid. 609(a). Such evidence is not admissible if a period of more than ten years has elapsed since the date of the conviction or time of release from confinement, whichever is later. Ariz. R. Evid. 609(b). However, Rule 609 also allows admission of a prior felony conviction that is over ten years old if the proponent provides written notice of intent to use the conviction and its probative value "substantially outweighs its prejudicial effect." Ariz. R. Evid. 609(b)(1)-(2).

**¶44**        Given the State's failure to prove a release date for the 2004 conviction and the substantial gap in time between the date of the conviction and its admission at trial, we are not persuaded that the prior felony conviction falls within the ten-year time limit. We nonetheless conclude the 2004 conviction was admissible under Rule 609(b). The State provided advanced written notice of its intent to use the 2004 conviction and, given the significant emphasis upon witness credibility in this case, the nature of the offenses, and Jackson's combative conduct with the officers, the 2004 conviction was particularly probative. Though the trial court failed to make specific findings under Rule 609(b), the determining factors are clear from the record. *See State v. Hunter*, 137 Ariz. 234, 237 (App. 1983) (noting the failure to make findings does not require reversal where it is clear from the record that the trial court balanced the relevant factors) (citation omitted).

**¶45**        Furthermore, we are convinced beyond a reasonable doubt that any error in the admission of the 2004 conviction was harmless. *See Bolton*, 182 Ariz. at 303 ("Improper admission of evidence of prior convictions is subject to harmless error analysis."). The nature of the conviction was sanitized, little attention was drawn to it, and the jury was instructed to consider it only to assess credibility.

### B.    Sentencing Enhancement

**¶46**        Jackson argues the trial court erred in determining the 2004 conviction was an historical felony.  We review the court's use of a prior historical felony conviction for purposes of sentence enhancement *de novo*. *State v. Rasul*, 216 Ariz. 491, 496, ¶ 20 (App. 2007) (citing *State v. Derello*, 199 Ariz. 435, 437, ¶ 8 (App. 2001)).

**¶47**        The State agrees the 2004 conviction was not a prior historical felony but argues the error was harmless because the trial court could have sentenced Jackson as a repetitive offender based on the 1981 conviction. Indeed, the 1981 conviction involved a deadly weapon and constitutes an historical felony conviction under A.R.S. §§ 13-105(22)(f) and -703(M). Accordingly, we agree that Jackson was properly sentenced as a category two repetitive offender under A.R.S. § 13-703(B) and (I) regardless of which conviction the court found to be historical.

**¶48**        Jackson argues the 1981 conviction does not qualify as a prior historical felony.  Contrary to Jackson's claim, the legislature's rejection of the "elements" analysis, by way of the 2012 and 2015 amendments to A.R.S. §§ 13-105(22) and -703(M), applies to his sentences.  *See State v. Newton*, 200 Ariz. 1, 2, ¶ 3 (2001) ("A basic principle of criminal law requires that an offender be sentenced under the laws in effect at the time he committed the offense for which he is being sentenced."); *State v. Johnson*, 240 Ariz. 402, 406, ¶ 18 (App. 2016) (noting the legislature's rejection of a comparative analysis for out-of-state convictions).  Thus, under A.R.S. §§ 13-105(22) and -703(M), an out-of-state prior felony conviction involving the discharge, use, or threatening exhibition of a deadly weapon or dangerous instrument constitutes an historical felony conviction, regardless of the time that has lapsed, as long as it is "punishable by that jurisdiction as a felony."  A "deadly weapon" is defined as anything designed for lethal use, including a firearm.  A.R.S. § 13-105(15).

**¶49**        Here, the State proved the 1981 conviction by clear and convincing evidence, and the certified records show Jackson used a deadly weapon — a shotgun — in the commission of the offense. *See State v. Morales*, 215 Ariz. 59, 61, ¶ 6 (2007) (explaining what the State must do to prove a prior conviction).  The record thus reflects Jackson has one prior historical felony conviction — the 1981 conviction — for purposes of

sentencing enhancement under A.R.S. § 13-703(B) and (I),[4] and one prior nonhistorical felony conviction — the 2004 conviction — for use as an additional aggravating factor. Because the ultimate sentencing decision was legally correct, we need not remand for resentencing.

## V.     Other Errors

**¶50**        Jackson argues that numerous additional errors constitute reversible error. Of the litany of issues presented, Jackson claims the trial court repeatedly prevented him from presenting a defense, placed unfair restrictions and limitations on his presentation at trial, and generally favored the State.

**¶51**        To the extent Jackson argues that cumulative error requires reversal, Arizona does not recognize the cumulative error doctrine in criminal cases, and we decline to ignore long-standing precedent here. *See State v. Hughes*, 193 Ariz. at 78-79, ¶¶ 24-25 (citing *State v. Dickens*, 187 Ariz. 1, 21 (1996)). We further decline to extend special treatment to defendants, such as Jackson, who choose to represent themselves. *See Smith v. Rabb*, 95 Ariz. 49, 53 (1963) (explaining litigants proceeding *in propria persona* are held to the same familiarity of procedures, statutes, and local rules as qualified members of the bar) (citations omitted). Finally, we decline to address arguments merely incorporated by reference without any meaningful analysis. *See* Ariz. R. Crim. P. 31.10(a)(7)(A) (stating an argument on appeal must contain "supporting reasons for each contention, . . . with citations of legal authorities and appropriate references to the portions of the record"); *State v. Barraza*, 209 Ariz. 441, 447, ¶ 20 (App. 2005) (disapproving the practice of incorporation of arguments by reference on appeal). For these reasons, we reject Jackson's remaining claims of reversible error.

## VI.     Sentencing Minute Entry

**¶52**        Finally, the trial court identified the sentence for possession of drug paraphernalia as a "slightly aggravated" term of 1.5 years' imprisonment in both the oral pronouncement of sentence and the related

---

[4]        Although Jackson argues that using the 1981 conviction as an historical felony results in double jeopardy, "[d]ouble jeopardy principles generally do not apply to sentencing proceedings." *State v. Ring*, 204 Ariz. 534, 548 (2003) (citing *United States v. DiFrancesco*, 449 U.S. 117, 132 (1980)). Jackson does not point to any authority suggesting the circumstances presented here supply an exception to that general rule.

minute entry. The 1.5-year sentence for a category two repetitive offender convicted of a class 6 felony is actually a slightly mitigated term. *See* A.R.S. § 13-703(I). The error appears to be inadvertent, and the court's intent is apparent from the record. *See State v. Bowles*, 173 Ariz. 214, 216 (App. 1992). Accordingly, we modify the sentencing minute entry to identify the sentence for possession of drug paraphernalia as a slightly mitigated term.

## CONCLUSION

**¶53**      We affirm Jackson's convictions and sentences but modify the sentencing minute entry to reflect that the sentence for the paraphernalia count represents a slightly mitigated term.

